# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| PACKET INTELLIGENCE LLC,<br>   *Plaintiff*,<br>v.<br><br>NETSCOUT SYSTEMS, INC., TEKTRONIX COMMUNICATIONS, and TEKTRONIX TEXAS, LLC,<br>   *Defendant*. | § § § § § § § § § § § § | Civil Action No. 2:16-cv-230-JRG<br><u>LEAD CASE</u> |
| PACKET INTELLIGENCE LLC,<br>   *Plaintiff*,<br>v.<br><br>SANDVINE CORPORATION, and SANDVINE INCORPORATED ULC,<br>   *Defendant*. | § § § § § § § § | Civil Action No. 2:16-cv-147-JRG<br><u>MEMBER CASE</u> |

## ORDER ON MOTIONS IN LIMINE AND PRETRIAL MOTIONS

The Court held a two-day Pretrial Conference, (Dkt. Nos. 218, 219), regarding the following motions by Plaintiff Packet Intelligence LLC ("Plaintiff" or "Packet Intelligence") and Defendant NetScout Systems, Inc., Tektronix Communications, and Tektronix Texas LLC ("NetScout") in Case No. 2:16-cv-230 and Plaintiff Packet Intelligence and Defendant Sandvine Corporation and Sandvine Incorporated ULC ("Sandvine") in Case No. 2:16-cv-147, such cases having been consolidated for pretrial purposes:

- Defendant NetScout's Motions in Limine (**Dkt. No. 196**);

- Defendant Sandvine's Motions in Limine (**Dkt. No. 194**);

- Plaintiff's Motions in Limine as to NetScout (**Dkt. No. 197**) and Plaintiff's Motions in Limine as to Sandvine (**Dkt. No. 198**);

- Defendant NetScout's Motions for Summary Judgment of No Indirect Infringement (**Dkt. No. 124**), for Summary Judgment of Non-Infringement (**Dkt. No. 135**), to Strike the Expert Report of Dr. Kevin Almeroth (**Dkt. No. 125**), to Exclude the Expert Report of Mr. Jim Bergman (**Dkt. No. 136**), for Summary Judgment as to Pre-Suit Damages (**Dkt. No. 127**), and for Summary Judgment as to Infringement After the Expiration of U.S. Patent Nos. 6,954,789; 6,839,751; AND 6,665,725 (**Dkt. No. 128**);

- Plaintiff's Motion to Enforce the Protective Order (**Dkt. No. 174**), to Strike and Exclude the Expert Report of Mr. Steve Waldbusser (**Dkt. Nos. 130, 132**), and for Summary Judgment of Non-Anticipation as to NetScout (**Dkt. No. 134**);

- Defendant Sandvine's Motion to Exclude the Expert Report of Mr. Jim Bergman (**Dkt. No. 137**), to Strike the Expert Report of Dr. Kevin Almeroth (**Dkt. No. 138**), and for Summary Judgment of Non-Infringement (**Dkt. No. 123**);

- Plaintiff's Motion to Strike the Expert Report of Dr. Scott Nettles (**Dkt. No. 133**) and for Summary Judgment of Non-Anticipation as to Sandvine (**Dkt. No. 131**).

The Court also requested that the Parties submit letter briefing addressing the extent to which Defendant NetScout was entitled to pursue particular defenses that Plaintiff claimed were either never raised or subsequently abandoned. (Dkt. No. 221 at 120:11–22.)

Having considered the Parties' arguments and for the reasons set forth at the Pretrial Conference as well as in this Order, the Court resolves these motions as follows.

I. **Motions in Limine**

  A. **Plaintiff's Motions In Limine with Respect to NetScout**

1. MIL No. 1: To Preclude Evidence or Argument Related to Inequitable Conduct or Other Equitable Issues

    This motion is **GRANTED** to the extent evidence relates *only* to the issue of inequitable conduct or other equitable issues that are not properly considered by the jury. *See* (Dkt. No. 221 at 24:14–29:19).

2. MIL No. 2: To Preclude Argument or Opinions Suggesting that Practicing the Prior Art is a Defense to Infringement

    This motion is **GRANTED**. *See* (Dkt. No. 221 at 66:20–70:12). Defendant NetScout shall approach and seek leave of the Court before arguing that practicing a reference in the prior art is a defense to infringement of the Asserted Patents. (*Id.*)

3. MIL No. 3: To Preclude Arguments, Opinions, and Testimony Disparaging the Patent Office

    This motion is **GRANTED**. (*Id.* at 70:13–71:7.) Neither Party shall criticize the Patent and Trademark Office ("PTO") nor the Patent Triable and Appeal Board ("PTAB") without seeking leave of the Court. (*Id.*)

4. MIL No. 4: To Preclude Any Character Evidence Relating to the Inventors or Any Use of the Words Steal, Stole, Lie, Liar, or Cheat

    This motion is **DENIED**. (*Id.* at 71:8–74:24.)

5. <u>MIL No. 5</u>: To Preclude Arguments, Opinions, and Testimony Regarding Presence in Texas and Impact on the Economy and Use of Pejorative Terms or Characterizations of Packet Intelligence or Its Business Model

  This motion is **GRANTED-IN-PART** to the extent that Defendant NetScout shall refer to Plaintiff using a term such as "patent troll" or "shell-company." Likewise, Defendant NetScout shall seek leave of the Court before identifying the geographic origin of a particular person or entity (i.e. referring to IPMG as a Swiss company) or discussing economic benefits created by NetScout's business. (Dkt. No. 221 at 74:25–79:15.) However, this motion is **DENIED** to the extent it seeks to exclude Defendant NetScout from referring to Packet Intelligence as a non-practicing entity or discussing Packet Intelligence's business model. (*Id.*)

6. <u>MIL No. 6</u>: To Preclude Arguments, Opinions, and Testimony that Meterflow Embodies or Practices the Asserted Patents

  This motion is **GRANTED**. (*Id.* at 29:20–33:15). Defendant NetScout may present evidence about MeterFlow only to the extent it relates to the background development story of the Asserted Patents.

7. <u>MIL No. 7</u>: To Preclude Evidence of Non-Infringing Alternatives

  This motion is **GRANTED**. (*Id.* a 79:16–82:11). Neither side may present evidence that a particular reference was or is a non-infringing alternative to the extent such conclusion is not included in an expert report without leave of the Court. However, both Parties are entitled to provide broad, high-level historical background for the Asserted Patents.

8. <u>MIL No. 8</u>:  To Preclude Evidence or Arguments Relating to Failure to Produce Documents, Destruction of Documents, or Discovery Disputes

    This motion is **GRANTED**.  (*Id.* at 82:15–86:21.)  Neither Party shall refer to discovery disputes during trial.  To the extent either Party seeks to provide evidence or argument that a particular individual destroyed evidence, such Party shall seek leave from the Court.  (*Id.*)

9. <u>MIL No. 9</u>:  To Preclude Evidence or Argument Relating to the Absence of Any Inventor at Trial

    This motion is **GRANTED**.  (Dkt. No. 221 at 33:17–36:5.)  Both Parties shall seek leave from the Court before discussing the absence of an inventor at trial.

10. <u>MIL No. 10</u>: To Preclude Evidence or Argument that Members of the RMON Working Group are Persons of Ordinary Skill in the Art

    This motion is **GRANTED-IN-PART** to the extent either Party seeks to provide evidence or argument that a person is one having ordinary skill in the art solely because they are a member of the RMON working group and it is **DENIED** in all other respects.  (*Id.* at 36:6–39:7.)

11. <u>MIL No. 11</u>:  To Preclude NetScout from Introducing Evidence Relating to Any NetScout or Tektronix Patents or To ASI Technology

    This motion is **DENIED**.  (*Id.* at 86:22–94:20.)

12. <u>MIL No. 12</u>: To Preclude Evidence or Argument Related to Any Third Party Entity's Stake or Share in Litigation Proceeds

    This motion is **DENIED**.  (*Id.* at 39:9–43:15.)

13. <u>MIL No. 13</u>: To Preclude Evidence or Argument on Unelected Prior Art or to Introduce Evidence or Argument Relating to Patents or Claims Packet Intelligence Has Dropped

    This motion is **GRANTED** in light of the Court's ruling on Plaintiff's Motion to Strike the Expert Report of Mr. Steve Waldbusser (Dkt. No. 132).  *See* Section II.A.iii.

14. <u>MIL No. 14</u>:  To Preclude Evidence and Testimony Regarding Irrelevant Software Licenses

    This motion is **DENIED** to the extent it seeks exclusion of certain MeterFlow licenses that may be relevant to the Parties' claims and defenses.  (Dkt. No. 221 at 95:19–99:9.)

15. <u>MIL No. 15</u>: To Preclude Evidence About the Fee Arrangement Between Packet Intelligence and its Counsel

    This motion is **GRANTED BY AGREEMENT**.  (*Id.* at 99:15–23.)

    **B.  <u>Defendant NetScout's Motions in Limine</u>**

1. <u>MIL No. 1:</u> To Preclude Evidence or Argument Concerning PTAB Decisions Denying Institution of Inter Partes Review

    This motion is **GRANTED**.  (*Id.* at 43:21–49:25.)  Neither Party may mention proceedings before the PTAB without seeking leave from the Court.  (*Id.*)

2. <u>MIL No. 2</u>: To Preclude Evidence or Argument Concerning the Financial Terms of the Cisco Settlement License Agreement

    This motion is **DENIED**.  (*Id.* at 53:12–55:15.)

3. <u>MIL No. 3</u>: To Preclude Argument that "Core Traffic Characterization" Technology Infringes the Asserted Claims

    This motion is **DENIED** in light of the Court's ruling on NetScout's Motion to Strike the Expert Report of Dr. Kevin Almeroth (Dkt. No. 125).  *See* Section II.B.iii.

4. <u>MIL No. 4</u>: To Preclude Evidence or Argument Concerning the Unused "Web Page Download Time KPI" and "Future Flows" features

    This motion is **DENIED** in light of the Court's ruling on NetScout's Motion to Strike the Expert Report of Dr. Kevin Almeroth (Dkt. No. 125). *See* Section II.B.iii.

5. <u>MIL No. 5</u>: To Preclude Argument that the Media Elements or Media Flows Feature Existed Before February 28, 2014

    This motion is **DENIED** in light of the Court's ruling on NetScout's Motion to Strike the Expert Report of Dr. Kevin Almeroth (Dkt. No. 125). *See* Section II.B.iii.

6. <u>MIL No. 6</u>: To Preclude Evidence or Argument Concerning Earlier, Uncorroborated Invention Dates

    This motion is **GRANTED**. (Dkt. No. 221 at 100:14–106:5.)

7. <u>MIL No. 7</u>: To Preclude Evidence or Argument Concerning Unrelated Gartner Litigation

    This motion is **GRANTED BY AGREEMENT** (*Id.* at 50:22–51:10.)

8. <u>MIL No. 8</u>: To Preclude Evidence or Argument Concerning Foreign Sales

    This motion is **GRANTED**. (*Id.* at 55:21–60:25.) Neither Party shall mention foreign sales by NetScout without leave of the Court.

9. <u>MIL No. 9</u>: To Preclude Evidence or Argument Concerning NetScout's Total Accused Product Revenue, Profits, or Net Worth

    This motion is **DENIED**. (*Id.* at 61:2-63:11.)

10. <u>MIL No. 10</u>: To Preclude Evidence or Argument Concerning Forward Citations to the Asserted Patents

    This motion is **DENIED**. (*Id.* at 63:12–64:12.)

11. <u>MIL No. 11</u>: To Preclude Evidence or Argument Concerning Any Customer or Third Party's Use of the Accused Products

This motion is **DENIED** in light of the Court's ruling on NetScout's Motion to Strike the Expert Report of Dr. Kevin Almeroth (Dkt. No. 125).  *See* Section II.B.iii.

12. <u>MIL No. 12</u>: To Preclude Evidence or Argument Concerning Pre-Suit Damages

This motion is **DENIED** in light of the Court's ruling on NetScout's Motion for Summary Judgment on Pre-Suit Damages (Dkt. No. 127).  *See* Section II.B.v.

13. <u>MIL No. 13</u>: To Preclude Evidence or Argument Concerning Infringement Under the Doctrine of Equivalents

This motion is **GRANTED**.  (*Id.* at 64:13–66:15.)

14. <u>MIL No. 14</u>: To Preclude Evidence or Argument that NetScout Willfully Infringed the Asserted Patents

This motion is **DENIED**.  (*Id.* at 106:15–110:8.)

15. <u>MIL No. 15</u>: To Preclude Plaintiff from Referring to the "Presumption of Validity"

This motion is **DENIED**.

### C. Plaintiff's Motions in Limine with Respect to Sandvine

1. <u>MIL No. 1</u>: To Preclude Arguments, Opinions, and Testimony that MeterFlow Embodies or Practices the Asserted Patents

This motion is **GRANTED**.  (*Id.* at 29:20–33:15).  Defendant Sandvine may present evidence about MeterFlow only to the extent it relates to the background development story of the Asserted Patents.

2. <u>MIL No. 2</u>: To Preclude Arguments, Opinions, and Testimony Regarding German Proceedings

 This motion is **GRANTED**. (*Id.* at 110:23–111:18.)

3. <u>MIL No. 3</u>: To Preclude Evidence or Argument Related to Any Third Party Entity's Stake or Share in Litigation Proceeds

 This motion is **DENIED**. (*Id.* at 39:9–43:15.)

4. <u>MIL No. 4</u>: To Preclude Evidence or Argument on Unelected Prior Art

 This motion is **GRANTED BY AGREEMENT** such that Sandvine agrees that it will not present evidence or argument regarding unelected prior art, except that (a) Sandvine may present prior art that PI specifically distinguished in order to secure allowance of the Asserted Patents and will not assert that such art invalidates the Asserted Patents in any way; and (b) Sandvine may present, through its expert, a deposition of the state of the art consistent with its expert report but will not mention any specific prior art reference that Sandvine has not elected.

5. <u>MIL No. 5</u>: To Preclude Evidence or Argument Related to Inequitable Conduct or Other Equitable Issues

 This motion is **GRANTED BY AGREEMENT** to the extent evidence relates *only* to the issue of inequitable conduct or other equitable issues that are not properly considered by the jury. (*Id.* at 24:14–29:19.)

6. <u>MIL No. 6</u>: To Preclude Evidence or Argument Relating to the Absence of Any Inventor at Trial

 This motion is **GRANTED BY AGREEMENT**.

7. <u>MIL No. 7</u>: To Preclude Evidence or Argument that Members of the RMON Working Group are Persons of Ordinary Skill in the Art

    This motion is **GRANTED-IN-PART** to the extent either Party seeks to provide evidence or argument that a person is one having ordinary skill in the art solely because they are a member of the RMON working group and it is **DENIED** in all other respects. (*Id.* at 36:6–39:7.)

8. <u>MIL No. 8</u>: To Preclude Evidence and Testimony Regarding Irrelevant Software Licenses

    This motion is **DENIED**. (*Id.* at 111:24–112:24.)

    **D. <u>Defendant Sandvine's Motions in Limine</u>**

1. <u>MIL No.</u> 1: Preclude Reference to Cisco Settlement and Any Arguments Related Thereto

    This motion is **CARRIED** in light of the Court's ruling on Sandvine's Motion to Exclude Portions of Mr. Jim Bergman's Expert Report (Dkt. No. 137). *See* Section II.E.i.

2. <u>MIL No. 2</u>: Preclude Reference to Huawei Settlement and Any Arguments or Testimony Related Thereto

    This motion is **GRANTED**.

3. <u>MIL No. 3</u>: Preclude Reference to Profits or Revenues for Non-Accused Products

    This motion is **DENIED**.

4. <u>MIL No. 4</u>: Preclude references relating to Sandvine's Total Profits, Revenues, and Other Financial Information

    This motion is **DENIED**. (*Id.* at 61:2-63:11.)

5. <u>MIL No. 5</u>: Preclude Reference to Foreign Sales Numbers for the Accused Products

    This motion is **GRANTED**. (*Id.* at 55:21–60:25.) Neither Party shall mention foreign sales by Sandvine without leave of the Court.

6. <u>MIL No. 6</u>: Preclude Evidence or Argument Regarding the Inter Partes Review Proceedings for the Asserted Patents

    This motion is **GRANTED**. (*Id.* at 43:21–49:25.) Neither Party may mention proceedings before the PTAB without seeking leave from the Court. (*Id.*)

7. <u>MIL No. 7</u>: Preclude Testimony from Dr. Almeroth with respect to infringement theories based on marketing materials and "analyzers" as presented by PI in opposition to SJ, but not discussed or relied upon by Dr. Almeroth

    This motion is **DENIED** in light of the Court's ruling on Sandvine's Motion to Strike the Expert Report of Dr. Almeroth (Dkt. No. 138). *See* Section II.E.ii.

8. <u>MIL No. 8</u>: Preclude Evidence of "Forward Citations" of the Asserted Patents in any Manner, and Especially as Evidence that the Asserted Patents are "Pioneering" or "Foundational"

    This motion is **DENIED**. (*Id.* at 63:12–64:12.)

9. <u>MIL No. 9</u>: Preclude Evidence, Testimony, or Arguments relating to Infringement under the Doctrine of Equivalents

    This motion is **GRANTED**. (*Id.* at 64:13–66:15.)

   **II.   Dispositive Motions**

       **A.   Plaintiff's Motions with Respect to NetScout**

           **i.   Motion to Enforce Protective Order (Dkt. No. 174)**

   This motion is **DENIED**. (Dkt. No. 221 at 179:5–184:13.)

           **ii.   Motion to Exclude Certain Opinions of Mr. Steve Waldbusser (Dkt. No. 130)**

   This motion was **WITHDRAWN**. (Dkt. No. 225 at 4:10–5:10.)

### iii. Motion to Strike Certain Opinions of Mr. Steve Waldbusser (Dkt. No. 132)

This motion was **WITHDRAWN** except as it relates to (1) Mr. Waldbusser's combination of the NetScout 6010 Probe reference and the TracksSessions Reference as well as (2) the exclusion of opinions relating to two patents that Packet Intelligence is no longer asserting in this case (the '099 Patent and the '646 Patent).

With respect to the combination of the NetScout 6010 Probe and the TracksSessions Reference, the Motion (Dkt. No. 132) is **GRANTED** and Mr. Waldbusser's opinions relating to the combination of these references is **STRICKEN**.

Likewise, the Court is persuaded that it either lacks subject matter jurisdiction over Plaintiff's unasserted patent claims and Defendant NetScout's resulting counterclaims, *see, e.g., Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1283 (Fed. Cir. 2012), or that it is appropriate to decline to exercise that jurisdiction under the Declaratory Judgment Act in light of the facts and circumstances of this case, *see, e.g., Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-744-JRG-RSP, 2016 WL 1426451, at *1 (E.D. Tex. Mar. 1, 2016), *report and recommendation adopted sub nom. Metaswitch Networks Ltd v. Genband US LLC*, No. 2:14-CV-744-JRG-RSP, 2016 WL 1404214 (E.D. Tex. Apr. 11, 2016). Therefore, these claims, including Defendant NetScout's counterclaims with respect to the unasserted patents, are **DISMISSED** and Plaintiff's Motion (Dkt. No. 132) is **GRANTED** with respect to opinions of Mr. Waldbusser that relate to patents that are no longer part of this case.

    **iv.**    **Motion for Summary Judgment as to Non-Anticipation by NetScout Probe and No License (Dkt. No. 134)**

This motion is **GRANTED-IN-PART** to the extent it relates to NetScout's license defense, which is no longer part of this case, and **DENIED** in all other respects. (Dkt. No. 225 at 29:9–38:12.)

    **B.**  **Defendant NetScout's Motions**

    **i.**    **Motion for Summary Judgment of No Indirect Infringement (Dkt. No. 124)**

This motion is **GRANTED** as unopposed in light of Dkt. No. 146.

    **ii.**    **Motion for Summary Judgment of Non-Infringement (Dkt. No. 135)**

This motion is **DENIED**. (Dkt. No. 221 at 122:24–157:15.)

    **iii.**    **Motion to Strike Expert Report of Dr. Kevin Almeroth (Dkt. No. 125)**

This motion is **DENIED**. (*Id.*)

    **iv.**    **Motion to Exclude Testimony of Mr. Jim Bergman (Dkt. No. 136)**

This motion is **DENIED**. (*Id.*)

    **v.**    **Motion for Summary Judgment as to Pre-Suit Damages (Dkt. No. 127)**

This motion is **DENIED**. (*Id.* at 157:16–165:20.)

    **vi.**    **Motion for Summary Judgment as to Infringement After the Expiration of U.S. Patent Nos. 6,954,789; 6,839,751; AND 6,665,725 (Dkt. No. 128)**

This motion is **DENIED**. (*Id.* 165:21–179:4.)

### C. Applicability of Certain Defenses

At the Pretrial Conference, Plaintiff argued for the first time that it sought exclusion of certain defenses that Plaintiff believes Defendant has either waived, abandoned, or not properly disclosed. (Dkt. No. 221 at 113:18–114:7.) The Court subsequently ordered each side to file letter briefs addressing these issues. (Dkt. No. 221 at 120:11–22.)

#### 1. Section 102(f)

Section 102(f), as it existed before the enactment of the America Invents Act,[1] provided that "[a] person shall be entitled to a patent unless . . . (f) he did not himself invent the subject matter sought to be patented . . . ." 35 USC § 102(f) (2006). Plaintiff argues that this single subsection gives rise to two distinct defenses: "invalidity . . . based on **derivation**, and . . . **non-joinder of inventors**." (Dkt. No. 222-1 at 1 (emphasis in original).) With respect to derivation, Plaintiff argues that Defendant NetScout "*never even asserted*" such a defense. *Id.* With respect to non-joinder, Plaintiff argues that NetScout "*abandoned*" this defense. *Id.* The Court disagrees.

In its Answer, Defendant NetScout argued that "[t]he claims of the Asserted Patents are invalid and/or unenforceable for failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, or 112, *including* but not limited to *the failure to name one or more contributing inventors* on one or all of the Asserted Patents, in violation of 35 U.S.C. §102(f)." (Dkt. No. 14 ¶¶ 3, 40, 60, and 70 (emphasis added).) In its Invalidity Contentions, Defendant NetScout similarly alleged that "[t]he Asserted Patents are *invalid under 35 U.S.C. §102(f), for*

---

[1] "The America Invents Act eliminates Section 102(f) as a statutory provision, but does not eliminate derivation as bar to patentability. The 'Whoever invents' language of 35 U.S.C.A. § 101 retains the prohibition on granting a patent to one who derived the invention from another as, under the words of old § 102(f), that person 'did not himself invent the subject matter sought to be patented.'" Robert A. Matthews, Jr., *Annotated Patent Digest* § 26:106 (2017).

*failing to name one or more of the proper inventors* who contributed to the claimed invention, including one or more members of the RMONMIB Working Group . . . ." (Dkt. No. 132-2 at 10 (emphasis added).)

In spite of these representations, Plaintiff argues that Defendant NetScout abandoned its § 102(f) defense for two reasons.

First, Plaintiff argues that NetScout made a "deliberate decision to drop" its § 102(f) defense. (Dkt. No. 222-1 at 6.). For example, when Plaintiff propounded an interrogatory seeking the factual and legal bases for NetScout's defenses, NetScout supplemented its original response, which did incorporate a § 102(f) defense, with additional information about its other defenses rather than § 102(f). (*Id.* at 3-4.) Likewise, the expert report of Mr. Steve Waldbusser, NetScout's invalidity expert, included a discussion of inequitable conduct but no mention of § 102(f). However, Plaintiff provides no support for the notion that this conduct reflects an abandonment of a defense. Instead, Plaintiff's arguments suggest that it should have either moved to compel a clearer interrogatory response, if it believed this response did not provide a basis for one of the defenses set forth in NetScout's Answer, or sought summary judgment, if Plaintiff believed the § 102(f) defense was abandoned. It did neither. By contrast, Plaintiff did seek (and obtain) summary judgment with respect to NetScout's license defense because NetScout abandoned that defense. (Dkt. No. 225 at 37:15–38:12.)

Second, Plaintiff argues that Defendant NetScout abandoned its § 102(f) defense because it did not sufficiently identify who, within the RMON working group, should have been listed as a proper inventor. (Dkt. No. 222-1 at 6-7.) Such an argument may well carry a motion to dismiss or a motion for summary judgment. However, the time for such motions has passed and the Court will not consider these arguments here.

Having concluded that Plaintiff was on notice with respect to Defendant NetScout's § 102(f) defense, the Court turns to Plaintiff's argument that even if Defendant NetScout did not abandon its "non-joinder" defense under § 102(f), it "never even asserted" a "derivation" defense under § 102(f). (Dkt. No. 222-1 at 5-6.) While some courts have discussed § 102(f) in terms of derivation, *see, e.g., Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003), or non-joinder, *see, e.g., Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348–49 (Fed. Cir. 1998), both formulations arise from the same statutory language. 35 U.S.C. 102(f) (2006). *See also* Robert A. Matthews, Jr., *Annotated Patent Digest* § 26:124 (2017). The Court will therefore not preclude Defendant NetScout from presenting arguments reflecting this statutory language, *i.e.* that the inventors of the Asserted Patents "did not . . . invent the subject matter sought to be patented." 35 U.S.C. 102(f) (2006).

### 2. Section 101

Defendant NetScout also insists that it has "Properly Preserved Its § 101 Defense." (Dkt. No. 223-1.) Plaintiff provides no argument on this point, but the Court finds no reason to conclude that the defense was waived in this case simply for failure to file a motion to dismiss or for summary judgment. Instead, Defendant NetScout now asks the Court to consider its § 101 defense under Federal Rule of Civil Procedure 52. The Court also finds no basis for concluding that Rule 52 is inapplicable here. *See, e.g., Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 838 (2015) ("A conclusion that an issue is for the judge does not indicate that Rule 52(a) is inapplicable."). Although there is divided authority on whether a § 101 defense ultimately requires or even involves factual findings, *compare Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1359 (Fed. Cir. 2017) ("We also review de novo whether a claim is patent-ineligible under the judicially created exceptions to § 101."); *Tranxition, Inc. v.*

*Lenovo (United States) Inc.*, 664 F. App'x 968, 970 (Fed. Cir. 2016) (Prost, C.J.) (unpublished) ("Whether claims are directed to patent-eligible subject matter is a question of law . . ."), *with Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) ("The § 101 inquiry *may* contain underlying factual issues." (internal quotation marks omitted, emphasis in original)); *In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009) (same), the Court will take up NetScout's § 101 defense after trial under Rule 52.

### D. Plaintiff's Motions with Respect to Sandvine

#### i. Motion to Strike Certain Opinions of Dr. Scott Nettles and Attendant Theories Related to PacketShaper

This motion is **GRANTED**. The Court is persuaded that the PacketShaper source code upon which Dr. Nettles' relied does not "merely prove[] what was previously disclosed in Sandvine's invalidity contentions," (Dkt. No. 144 at 6), and that, on balance, the factors justifying this failure favor exclusion as the proper remedy. *See Cioffi v. Google, Inc.*, No. 213CV00103JRGRSP, 2017 WL 90756, at *1 (E.D. Tex. Jan. 10, 2017) (discussing the relevant factors). In particular, the Court concludes that Plaintiff would be prejudiced if Sandvine were permitted to rely on a new invalidity theory premised on functionality identified for the first time in Dr. Nettles' expert report.

#### ii. Motion for Summary Judgment of Non-Anticipation

This motion is **DENIED**.

E. **Defendant Sandvine's Motions**

    i. **Motion to Exclude Portions of Mr. Jim Bergman's Reasonable Royalty Calculation and Opinions Regarding Damages (Dkt. No. 137)**

This motion is **GRANTED-IN-PART** as it relates to the Cisco license, with leave for Plaintiff to file a supplemental report and Defendant Sandvine to file a supplemental rebuttal report, (Dkt. No. 49:10–50:7), **GRANTED-IN-PART** as it relates to a discussion of the Huawei License in particular, and **DENIED** in all other respects. (Dkt. No. 225 at 38:13–50:19.)

    ii. **Motion to Strike the Infringing Report of Dr. Kevin Almeroth (Dkt. No. 138)**

This motion is **DENIED**. (*Id.* at 51:2–59:25.)

    iii. **Motion for Summary Judgment of Non-Infringement (Dkt. No. 123)**

This motion is **DENIED**. (Dkt. No. 225 at 60:1–75:16.)

**So Ordered this**
**Sep 29, 2017**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE