IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PACKET INTELLIGENCE LLC,<br><br>             Plaintiff,<br><br>v.<br><br>NETSCOUT SYSTEMS, INC., TEKTRONIX COMMUNICATIONS, TEKTRONIX TEXAS, LLC,<br><br>             Defendants. | CIVIL ACTION NO. 2:16-CV-00230-JRG |

### ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR AN ONGOING ROYALTY

Before the Court is Plaintiff Packet Intelligence LLC's[1] Motion for an Ongoing Royalty. (Dkt. No. 267). Having considered the Motion, the Court is of the opinion that it should be **GRANTED-IN-PART** as set forth herein for the reasons set forth below.

### I. BACKGROUND

This case was tried to a jury between October 10, 2017, and October 13, 2017. (Dkt. Nos. 239–42). The jury returned a verdict on October 13, 2017, finding willful infringement of the asserted claims, finding none of the asserted claims invalid, and awarding damages in the amount of $5.75 million. (Dkt. No. 237). Following submission of the evidence to the jury, on October 13, 2017, a bench trial was conducted as to equitable issues. (Dkt. No. 242). The Court entered a Post-Trial Docket Control Order setting the conduct of post-trial proceedings. (Dkt. No. 243).

---

[1] For clarity, Plaintiff Packet Intelligence LLC will be referred to as "Plaintiff," "Packet Intelligence," or "PI." Similarly, Defendants NetScout Systems, Inc., Tektronix Communications, and Tektronix Texas, LLC will be referred to as "Defendants," "NetScout," or the "NetScout Defendants."

The Court heard argument on various motions, including the instant Motion on January 17, 2017. (Dkt. No. 293).

The Jury found that Packet Intelligence proved that (i) NetScout infringed the U.S. Pat. Nos. 6,665,725, 6,839,751, and 6,954,789 (the "Asserted Patents"), (ii) that the infringement was willful, (iii) that none of the asserted claims of the Asserted Patents were invalid, (iv) that PI was entitled to damages of $3.5 million from the date of first infringement to March 15, 2016 (the date of the filing of this suit) and $2.25 million for infringement from the March 15, 2016 to the date the verdict was rendered, and (v) that that damages award was intended to be a running royalty. (Dkt. No. 237).

## II. APPLICABLE LAW

"Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate," but "awarding an ongoing royalty where 'necessary' to effectuate a remedy, be it for antitrust violations or patent infringement, does not justify the provision of such relief as a matter of course whenever a permanent injunction is not imposed." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007). "District courts have considerable discretion in crafting equitable remedies" including "impos[ing] an ongoing royalty." *Id.* at 1316 (Rader, J., concurring).

"[T]here is a 'fundamental difference' between 'a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement.'" *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008)). The Federal Circuit has instructed that "when calculating an ongoing royalty rate, the district court should consider the 'change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability.'" *XY*,

890 F.3d at 1297 (quoting *Amado*, 517 F.3d at 1362). When, as here, patent claims are held to be not invalid and infringed, "this amounts to a 'substantial shift in the bargaining position of the parties.'" *XY*, 890 F.3d at 1297 (quoting *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012)). The Federal Circuit also instructed district courts to "consider changed economic circumstances, such as changes related to the market for the patented products." *XY*, 890 F.3d at 1297 (citing *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 n.15 (Fed. Cir. 2007)); *ActiveVideo*, 694 F.3d at 1343 (noting that district courts may consider "additional evidence" of "economic circumstances that may be of value in determining an appropriate ongoing royalty").

"The requirement to focus on changed circumstances is particularly important when, as in this case, an ongoing royalty effectively serves as a replacement for whatever reasonable royalty a later jury would have calculated in a suit to compensate the patentee for future infringement." *XY*, 890 F.3d at 1297 (citing *Paice*, 504 F.3d at 1315 n.15 ("This process will . . . allow the parties the opportunity to present evidence regarding an appropriate [ongoing] royalty rate to compensate [the patentee] . . . ." (emphasis added)). "The later jury would necessarily be focused on what a hypothetical negotiation would look like after the prior infringement verdict. Therefore, post-verdict factors should drive the ongoing royalty rate calculation in determining whether such a rate should be different from the jury's rate." *XY*, 890 F.3d at 1297 (citing *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017) ("Ongoing royalties may be based on a post-judgment hypothetical negotiation using the Georgia-Pacific factors.")).

### III. DISCUSSION

Packet Intelligence seeks an ongoing royalty in the face of NetScout's continuing infringement "through ongoing use and sales of its GeoProbe products, and through using and

selling the same technology found to infringe in a new product line (ISNG)." (Dkt. No. 267 at 3). PI also seeks an going royalty rate increased both due to changed circumstances following the jury verdict and further enhancement due to what it alleges is continued willful infringement. (*Id*. at 8, 12).

As this Court has noted, "[t]he question of whether to award an ongoing royalty is guided at least in part by the form and scope of relief awarded by the jury." *Cioffi v. Google, Inc.*, Civil Action No. 2:13-cv-103, 2017 U.S. Dist. LEXIS 147590, at *6 (E.D. Tex. Sep. 12, 2017).[2] Here, as in *Cioffi*, the jury's verdict expressly indicates the reasonable royalty was a running royalty as opposed to a lump sum award.

Further, as the Court noted at the hearing on this Motion, there is no dispute "that this is not a lump-sum award by the jury, and that if the verdict . . . [is] left in place, that a forward-looking royalty or a running royalty based on this verdict, without being amended, would be an implied royalty rate of 1.4 percent." (Dkt. No. 297, Hr'g Tr. at 37:22–38:2). That said, NetScout argues that the jury's damage award "sufficiently compensated PI for past and future infringement" and that the jury's damages award "already exceeds the amount, if any, to which PI is entitled."

---

[2] This statement of law is well supported, as this Court noted in *Cioffi*. 2017 U.S. Dist. LEXIS 147590, at *6–8 ("For example, in *Summit 6, LLC v. Samsung Elecs. Co.*, the jury's damages award took the form of a lump sum royalty. 802 F.3d 1283, 1301 (Fed. Cir. 2015). There, the Federal Circuit held that "the district court properly denied [the plaintiff's] request for an ongoing royalty because the jury award compensated [the plaintiff] for both past and future infringement through the life of the patent." *Id*. at 1300-01. *See also Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) ("An award of an ongoing royalty is appropriate because the record supports the district court's finding that [the plaintiff] has not been compensated for [the defendant's] continuing infringement."); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("Fresenius I") ("A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales of repair parts. . . . The district court was within its discretion to impose a royalty on those sales of disposable products in order to fully compensate [the patentee] for the infringement."); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 U.S. Dist. LEXIS 111425, 2017 WL 3034655, at *2 (E.D. Tex. July 18, 2017) (Bryson, J.) ("*UroPep*") ("[I]t would be improper for the Court first to conclude that the damages awarded by the jury do not cover the post-verdict period, but then to rule that [the plaintiff] is not entitled to any relief for that period."). Accordingly, whether the jury award compensates the patentee for future infringement is important because without some form of prospective relief, the patent owner is effectively forced to "resort to serial litigation" to receive compensation for future infringement. *UroPep*, 2017 U.S. Dist. LEXIS 111425, 2017 WL 3034655, at *2 (quoting *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012)).

The Court disagrees.[3]  A jury, duly sworn and empaneled, considered all of the evidence in rendering its verdict and *specifically indicated* that its verdict was *not* to be considered to be a lump-sum license, but rather a running royalty.  The jury was clearly informed that in so indicating it was permitting Packet Intelligence to be compensated for infringement in the future.  (*See* Dkt. No. 252, Trial Tr. (10/13/17 All Day) at 59:5–11 ([Mr. Davis] "And, finally, it's important to look at the royalty. You've been asked -- you heard Mr. Bergman testify that a running royalty is the appropriate royalty in this case, and we ask that when you make this determination, that you select running royalty so that Packet Intelligence can be compensated for any infringement going forward from here.")).

While ongoing royalties are a form of equitable relief, and a court may "exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances," *WhitServe*, 694 F.3d at 35, the verdict form indicates that the jury's damages award was intended to compensate Plaintiffs only for past infringement and neither party has pointed to evidence or arguments presented at trial that would support an argument that the jury award included future infringement.  From this, the Court finds it fitting to award an ongoing royalty in this case, as the jury's award fails to compensate Plaintiffs for future infringement.  *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1301 (Fed. Cir. 2015) (affirming denial of ongoing royalty because "the jury award compensated [the plaintiff] for both past and future infringement through the life of the patent"); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) ("An award of an ongoing royalty is appropriate because the record supports the district court's finding

---

[3] As the Court notes in its concurrently issuing Order Granting Pre- and Post-Judgment Interest, if there is "scant evidence," such that the jury's verdict should be revisited, it will be addressed in the Motion for Judgment as a Matter of Law which NetScout promises is forthcoming.  (*See* Dkt. No. 275 at 2 n.2).  As in the concurrently issuing Order, while the Court does not believe there is an immediate need to address this issue in its determination of this Motion, to the extent it is required, the Court finds Packet Intelligence has pointed to sufficient evidence to rebut NetScout's allegation.

that [the plaintiff] has not been compensated for [the defendant's] continuing infringement."); *UroPep*, 2017 U.S. Dist. LEXIS 111425, 2017 WL 3034655 at *2 ("[I]t would be improper for the Court first to conclude that the damages awarded by the jury do not cover the post-verdict period, but then to rule that [the plaintiff] is not entitled to any relief for that period.").

However, Packet Intelligence moves this Court award this ongoing royalty to both "the infringing G10 and GeoBlade products" *and* a new product line "the InfiniStreamNG (ISNG)." Serious Seventh Amendment concerns are raised by the prospect of finding a product not included in the infringement contentions could be subject to an ongoing royalty. There is a clear absence of a jury's finding of infringement of such product.[4] As this Court noted during argument, "[parties] don't accuse technology, [parties] accuse products that embody and practice technology. [Parties] have to identify specific products." (Dkt. No. 297, Hr'g Tr. at 41:16–19). This requirement exists to avoid precisely this problem. Further, the evidence presented by PI in support of its contention that the ISNG products are not "colorabl[y] different" from the GeoBlade products is of no effect. The key fact here is that PI never accused the ISNG products of infringement. Consequently, there is no basis in law for the Corut to award any recovery as to those products. Notably, this Court denied Plaintiff's Motion to Amend its infringement contentions to include the InfiniStream family of products (Dkt. No. 60) in April 2017, well before trial, clearly demarking the products that were in and those that were out of the case. (Dkt. No. 100). Accordingly, the Court finds that the ongoing royalty may only be applied to products actually accused in this case and specifically excludes InfiniStream products from such an application.

---

[4] The same concerns are not nearly as present as to products that are "not more than colorably different" from adjudged infringing products. *See, e.g., Mondis Tech. Ltd. v. Chimei Innolux Corp.*, No. 2:11-cv-378-JRG, 2012 U.S. Dist. LEXIS 60004, at *6-8 (E.D. Tex. Apr. 30, 2012) (granting ongoing royalty to infringing products and any products "not colorably different" from infringing technology).

The Court next addresses the issue of the appropriate rate. The base rate all parties agree should be the starting point is the implied royalty rate of 1.41% based upon the jury's damages award. (Dkt. No. 267 at 2 n.1[5]; Dkt. No. 276 at 10 ("If this Court determines an ongoing royalty is appropriate, the proper starting point for the analysis is the jury's 1.4% implied royalty rate.")).

"Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved." *Amado*, 517 F.3d at 1362; *accord Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1317 (Fed. Cir. 2007) ("[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors.") (Rader, J., concurring).

Considering the Jury's verdict in this case, the Court finds it appropriate to "assume that the jury finding of liability in this case would have strengthened [the plaintiff's] bargaining position had the parties negotiated a license after the jury verdict." *Boston Sci. Corp. v. Johnson & Johnson*, No. C 02-00790 SI, 2009 U.S. Dist. LEXIS 35372, at *12 (N.D. Ca. Apr. 19, 2009).

Packet Intelligence also notes that "between 2010 and the present, PI has both successfully asserted and defended its patents" including against Cisco. (Dkt. No. 267 at 9 (citation omitted)). PI also notes the citation of its patents by other patents "more than 100 additional times." (*Id*. at 9–10 (citation omitted)). Finally, and most importantly to PI, it has successfully prevented institution of IPR proceedings on its patents six times. (*Id*. at 10 (citation omitted)).

---

[5] The Court denied Packet Intelligence's Amend the Jury's Damages Award to Conform to the Evidence at Trial and for Entry of Judgment (Dkt. No. 268) which sought increasing the award to an implied 3.5% rate. (*See* Dkt. No. 297, Hr'g Tr. at 17:10-12).

Considering these facts,[6] the Court finds that an increase in the ongoing royalty above the implied base rate of 1.41% is appropriate. In view of the foregoing, the Court finds that the ongoing royalty rate should be set at 1.55%.

## IV. CONCLUSION

As set forth above, the Court hereby **GRANTS-IN-PART** Plaintiff Packet Intelligence LLC's Motion for an Ongoing Royalty. (Dkt. No. 267). Accordingly, the ongoing royalty rate in this case is hereby **SET** at 1.55% of the revenue received by NetScout produced by the post-verdict infringing conduct (use, sales, offers for sale, or importation into the U.S.) of the accused G10 and GeoBlade products through the life of the asserted patents.

**So ORDERED and SIGNED this 7th day of September, 2018.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[6] For the same reasons as noted above, the Court will not consider evidence relating to the ISNG product line in its determination of the ongoing royalty.