**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **PACKET INTELLIGENCE LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **NETSCOUT SYSTEMS, INC., TEKTRONIX COMMUNICATIONS, and TEKTRONIX TEXAS, LLC,** <br><br> Defendants. | Case No. 2:16-cv-00230-JRG <br><br> **Jury Trial Demanded** <br><br> **(Lead Case)** |

**NETSCOUT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO PRE-SUIT DAMAGES PURSUANT TO FED. R. CIV. P. 50(b)**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. LEGAL STANDARD ..................................................................................................... 2
III. PI IS NOT ENTITLED TO ANY PRE-SUIT DAMAGES ............................................. 3
    A. PI Failed to Require Marking of Products Practicing the '789 Patent ................... 3
        1. There Was No Evidence That Patent-Practicing Cisco or Huawei Products Were Marked ................................................................................. 4
        2. There Was No Evidence That Patent-Practicing MeterFlow Products Were Marked ................................................................................. 5
        3. PI Failed To Prove Compliance With § 287(a) ........................................ 7
    B. PI Presented No Evidence of Pre-Suit Damages From Infringement of the '751 and '725 Method Patents ............................................................................... 10
    C. Any Enhancement Should Apply Only to Post-Filing Damages .......................... 12
IV. CONCLUSION .............................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks v. Verizon Commc'ns*,
   694 F.3d 1312 (Fed. Cir. 2012)..................................................................................................11

*Allstate Ins. Co. v. Receivable Fin. Co. LLC*,
   501 F.3d 398 (5th Cir. 2007) ..................................................................................... 2, 9, 10, 12

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
   2018 WL 1525686 (E.D.N.Y. Mar. 27, 2018) .......................................................................10

*Artic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017).......................................................................................... *passim*

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352, 1363 (Fed. Cir. 2004).......................................................................................3

*Hiltgen v. Sumrall*,
   47 F.3d 695 (5th Cir. 1995) ......................................................................................................2

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098, 1111 (Fed. Cir. 1996).........................................................................................4

*Pineda v. United Parcel Serv., Inc.*,
   360 F.3d 483, 486 (5th Cir. 2004) ............................................................................................2

*TGIP, Inc. v. AT&T Corp.*,
   527 F. Supp. 2d 561 (E.D. Tex. 2007).....................................................................................3

**Statutes**

35 U.S.C. § 287(a) ........................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 50(a) .........................................................................................................3

Fed. R. Civ. P. 50(b) .........................................................................................................1

Defendants NetScout Systems, Inc. and NetScout Systems Texas, LLC (formerly known as Tektronix Texas, LLC d/b/a Tektronix Communications) (collectively "NetScout" or "Defendants") hereby respectfully renew their motion for judgment as a matter of law of no pre-suit damages pursuant to Federal Rule of Civil Procedure 50(b).

**I.      INTRODUCTION**

This Court should enter judgment as a matter of law that Plaintiff Packet Intelligence ("PI") is not entitled to any pre-suit damages for infringement of U.S. Patent Nos. 6,954,789 ("the '789 patent"), 6,839,751 ("the '751 patent"), and 6,665,725 ("the '725 patent") (collectively, the "Patents-In-Suit").  The Jury awarded $3.5 million in pre-suit damages and $2.25 million in post-filing damages.  Dkt. No. 237 at 5 (Verdict).  The pre-suit damages award should be vacated because PI: (1) failed to show that it satisfied the marking requirement to qualify for pre-suit damages for PI's asserted apparatus patent (the '789 patent) and (2) failed to offer evidence of any damages due to NetScout's incidental internal use of PI's asserted method patents (the '751 and '725 patent), the only potential infringement of the method claims to survive this Court's summary judgment of no pre-suit indirect infringement.

First, PI failed to meet its burden of proving compliance with the marking requirement of 35 U.S.C. § 287(a).  Indeed, PI admitted it lacked the evidence needed to prove its compliance, relying instead on the erroneous contention that NetScout bore the burden on this issue.  The Federal Circuit conclusively rejected PI's position in *Artic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017), holding that once a defendant meets the "low bar" of identifying an unmarked, patent-practicing product, as NetScout did in this case, then the burden shifts to the patentee to prove either that the identified product had been marked or did not practice the patent.  PI offered no evidence of marking and did not even put forward any argument that the identified products were not infringing, let alone sufficient evidence that could

1

even arguably support a finding in PI's favor on marking. As such, PI is not entitled to pre-suit damages for infringement of the '789 patent.

Second, pre-suit damages are also precluded for the '751 and '725 patents, PI's asserted method patents. This Court granted summary judgment of no pre-suit indirect infringement of PI's method patents. Thus, the only potential basis for pre-suit damages of these method claims could arise from NetScout's direct infringement, that is from its own incidental use and testing of the Accused Products. PI, however, based its damages case solely on *sales* of the Accused Products, not upon testing or incidental use by NetScout. PI provided no evidence of pre-suit damages from infringement of the '751 and '725 patents. This absence of damages evidence, combined with PI's failure to prove compliance with § 287's marking requirement with respect to the '789 patent, precludes all pre-suit damages. PI, therefore, cannot recover the $3.5 million the Jury awarded in pre-suit damages. As a result, any enhanced damages should also be reduced as only the $2.25 million in post-filing damages is subject to enhancement.

## II. LEGAL STANDARD

Judgment as a matter of law is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995) (internal quotation marks omitted). "A motion for judgment as a matter of law should be granted if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for a party.'" *Allstate Ins. Co. v. Receivable Fin. Co. LLC*, 501 F.3d 398, 405 (5th Cir. 2007) (quoting *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004)). "A court should grant a post-judgment motion for judgment as a matter of law only when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" *Id*. Jury findings are "reviewed under the 'substantial evidence' rule. 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004)).

### III. PI IS NOT ENTITLED TO ANY PRE-SUIT DAMAGES

PI's failure to prove that products practicing the '789 patent were marked combined with its failure to provide evidence of pre-suit damages from infringement of the '751 and '725 method patents precludes all pre-suit damages.

#### A. PI Failed to Require Marking of Products Practicing the '789 Patent

NetScout moved for summary judgment that PI could not collect any pre-suit damages for any infringement of the '789 patent because PI did not provide actual notice of its '789 patent infringement claims prior to filing its Complaint on March 15, 2016, and PI licensed the '789 patent without requiring any of its licensees (*i.e.,* Exar, Huawei, and Cisco) to mark licensed products with any patent number. Dkt. No. 127 (NetScout Mot. for Sum. J. of No Pre-Suit Damages for '789 Patent). Although this Court denied that motion (Dkt. No. 228 at 13), this Court held that marking was "a live issue for the trial" and "depending on what the evidence is, [the Court would] take up motions under Rule 50(a) after the evidence is in." Dkt. No. 301, 9/19/17 Pretrial Conf. Tr. at 101:13-102:14. The evidence at trial established that PI did not meet its burden of proving compliance with § 287(a).[1]

As the Federal Circuit recently explained, the patentee, who best knows whether its (or its licensees') articles have been marked, "bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,

---

[1] NetScout's Rule 50(a) JMOL of no pre-suit damages was denied. Dkt. No. 250, 10/12/17 PM Trial Tr. at 106:3-107:12.

876 F.3d 1350, 1366 (Fed. Cir. 2017) (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996)). If a patentee "has not 'given notice of his right' by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." *Id*. "Section 287 is thus a limitation on damages, and not an affirmative defense." *Id*. "Compliance with § 287 is a question of fact." *Id.* (citing *Maxwell*, 86 F.3d at 1111). "A patentee's licensees must also comply with § 287, because the statute extends to 'persons making or selling any patented article for or under [the patentee].'" *Id*. (quoting § 287(a)).

There is no dispute that the '789 patent is subject to the damages limitation of § 287(a) due to the assertion of its apparatus claims. *See* Dkt. No. 245, 10/10/17 PM Trial Tr. at 156:4-9 (Almeroth: "the claims of the '789 patent were apparatus claims."). Here, PI licensed its patents to multiple licensees and bore the burden of demonstrating that it undertook reasonable efforts to ensure that its licensees to the '789 patent marked their patented articles. *Arctic Cat*, 876 F.3d at 1366. PI offered no evidence demonstrating its licensees marked or that PI had made any effort, reasonable or otherwise, to ensure they did.

> 1. **There Was No Evidence That Patent-Practicing Cisco or Huawei Products Were Marked**

The "managing member" of PI and its corporate representative, Brad Brunell, conceded that PI's agreements granting Cisco and Huawei licenses to the '789 patent do not "contain any requirement that products covered by the patent claims be marked." Dkt. No. 245, 10/10/17 PM Trial Tr. at 45:10-11, 89:5-14; *see also* PTX320 (PI-Cisco agreement lacking marking provision); PTX301 (PI-Huawei agreement lacking marking provision). The Cisco and Huawei license agreements grant rights to the '789 patent for all of Cisco's and Huawei's products and services, yet there was no evidence that any of their products were marked. *See* PTX320 at § 2.1; PTX301 at § 2.1; Dkt. No. 300, 10/11/17 AM Trial Tr. at 75:19-25. Moreover, PI filed

suit accusing Cisco's and Huawei's products of infringing the '789 patent, resulting in the Cisco and Huawei agreements. Dkt. No. 245, 10/10/17 PM Trial Tr. at 68:14-69:8, 71:15-72:10; 76:6-20; Dkt. No. 246, 10/10/17 PM Sealed Trial Tr. at 3:17-19. Thus, undisputed evidence established that PI itself claimed that Cisco and Huawei products practiced the '789 patent, that those products were licensed to the '789 patent, and that PI did not require those products to be marked or take other action to have them marked. *See id*. PI proffered no evidence to rebut this evidence that Cisco's and Huawei's unmarked products practice the '789 patent.[2]

### 2. There Was No Evidence That Patent-Practicing MeterFlow Products Were Marked

Mr. Brunell also conceded that he was not aware of any of the prior owners of the Patents-In-Suit, including Exar, marking their products with any patent numbers. 10/10/17 PM Tr. at 88:20-89:4 (Dkt. 245).[3] Indeed, PI's license of the Patents-in-Suit to Exar does not contain a marking requirement. PTX163 at *71-74 (PI- Exar license lacking marking provision). The following evidence established that unmarked MeterFlow software products sold by Exar practice the '789 patent:

- Exar's corporate witness, Michael Ham, testified that the Patents-in-Suit "were **underlying the technology** that was being sold as **MeterFlow** and **MeterWorks**." Dkt. No. 249, 10/12/17 AM Trial Tr. at 138:12-25 (emphasis added). He also testified that the

---

[2] *See also* Dkt. No. 127-3 (*PI v. Cisco* Compl.) ¶ 29 (listing Cisco products including *e.g.,* Cisco ASR 1000 Routers and Wireless Controllers accused of infringing the '789 patent); Dkt. No. 169-4 at *72348 (PI infringement contention listing Cisco products including *e.g.,* Cisco ASR 1000 Routers and Wireless Controllers as accused of infringing claim 19 of the '789 patent); Dkt. No. 127-7 (*PI v. Huawei* Compl.) ¶ 13 (listing Huawei products including, *e.g.,* AR150, AR200, AR1200, AR2200, AR3200, NE-40E Enterprise Routers accused of infringing the '789 patent).

[3] Mr. Brunell testified that the Patents-in-Suit were owned by "Technically Elite, then Apptitude, then Hi/Fn, then Exar, and then Packet Intelligence acquired the portfolio from Exar." *Id*.

- Patents-in-Suit "were derived from the development work that was done to generate the products" of "**MeterFlow, MeterWorks**" and "were related **flow classification**" which is what those products were "based on." *Id*. at 141:1-23 (emphasis added).

- The provisional application for the '789 patent states that "the term **MeterFlow** is to be understood to mean the **preferred embodiment of the invention**." DX253 at *464 (emphasis added); *see also* Dkt. No. 244, 10/10/17 AM 106:21-107:23 (same).

- First named inventor of the '789 patent, Russell Dietz, submitted a sworn declaration to the USPTO referring to the "**MeterFlow Accelerator**" software as evidence of conception prior to March 1, 1999, of the invention claimed by the '789 patent. PTX010 at *14918 (emphasis added).

- Mr. Dietz also e-mailed the "MeterFlow team" referring to the applications for the Patents-in-Suit as the "official patents for **MeterFlow**," as claiming "the **MeterFlow system** and the functions which enable **MeterFlow** to operate," and as being related to the "**core technology**." DX274 (emphasis added).

- The agent who prosecuted the '789 patent, Dov Rosenfeld, testified that the technology described in the provisional application "has a name called **MeterFlow**" and agreed that the application "discloses **MeterFlow** as the preferred embodiment and dealt with **traffic flow recognition**." Dkt. No. 249, 10/12/17 AM Trial Tr. at 121:5-125:10 (emphasis added).

- The Vice President and CFO of Apptitude, Jack Lazar, also referred to the provisional application of the '789 patent as being "related to the **MeterFlow technology**" in an e-mail with the subject line of "**MeterFlow Patent!**" DX524 (emphasis added). The evidence also showed that these unmarked MeterFlow products were sold from 2009

6

to 2017. *See* DX004 (Exar Corporation "MeterFlow and MeterWorks Invoices" dated 11/05/09 to 1/30/17 showing individual sales of "MWK" and "MFL-SDK-C" products); Dkt. No. 249, 10/12/17 AM Trial Tr. at 139:16-140:25 ("Q. This document is reflecting revenues or amounts billed, I should say, by Exar to parties relating to MeterFlow and MeterWorks; is that right? A. Yes. Q. This would represent the … amount billed from November of 2009 to the present? A. Yes."). Thus, the evidence firmly established that unmarked MeterFlow products practicing the '789 patent were sold from at least 2009 to January 2017, well-beyond the date of the March 15, 2016 Complaint. Dkt. No. 1. These sales show that PI failed to comply with § 287(a) during the entire pre-suit damages period.

To attempt to rebut this evidence, PI only presented evidence that there were "many versions" of the MeterFlow software "that evolved" to include new "capabilities." Dkt. No. 244, 10/10/17 AM Trial Tr. at 122:6-124:1. While the MeterFlow software may have evolved to include new features, the evidence showed that the '789 patent was part of the "core technology" and was "underlying the technology that was being sold as MeterFlow and MeterWorks." DX0524; DX274; Dkt. No. 249, 10/12/17 AM Trial Tr. at 138:12-25. PI presented no evidence that the "underlying" or "core technology" of the MeterFlow software changed in subsequent versions. *Id*. On the contrary, given that the '789 patent is part of "the core intellectual property" (DX524 at 1) underlying MeterFlow, the evidence established that MeterFlow practiced the '789 patent in all versions, including those sold from 2009 to 2017. DX004.

### 3. PI Failed To Prove Compliance With § 287(a)

PI may argue, as it has throughout this case, that PI was not required to prove compliance with § 287(a)'s marking requirement. This argument is based on PI's erroneous assumption that NetScout was required to provide a "claim chart or expert opinion demonstrating" that the unmarked products practiced the '789 patent. *See* Dkt. No. 148 at 11 (PI's Opp. to NetScout's

MSJ re Marking); Dkt. No. 250, 10/12/17 PM Trial Tr. at 88:2-19. The Federal Circuit in *Arctic Cat*, however, squarely rejected PI's argument. *Arctic Cat* confirmed that after NetScout identified products it believed were unmarked, patent-practicing products, PI bore the burden to prove compliance with the marking provision:

> We hold an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked "patented articles" subject to § 287. To be clear, this is a low bar. The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent. The alleged infringer's burden is a burden of production, not one of persuasion or proof. … **Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention**.

*Arctic Cat*, 876 F.3d at 1367-68 (vacating denial of marking JMOL motion because once defendant "identified fourteen unmarked [licensed products], which it argued fell within the patent claims, it was the patentee's burden to establish compliance with the marking statute—that these products did not fall within the patent claims.") (emphasis added). The *Arctic Cat* court also confirmed that an "alleged infringer need not produce claim charts to meet its initial burden of identifying products." *Id*. at 1369.

Here, NetScout introduced evidence identifying the MeterFlow, Huawei, and Cisco products as unmarked products that practice the '789 patent. *See, e.g.,* Dkt. No. 245, 10/10/17 PM Trial Tr. at 88:20-89:4; 106:21-107:23; Dkt. No. 249, 10/12/17 AM Trial Tr. at 121:5-125:10; 138:12-25; PTX010 at *14918; DX274; DX524; DX004. Indeed, the evidence showed that PI itself claimed that Cisco and Huawei products practiced the '789 patent, that those products were licensed to the '789 patent, and that PI did not require those products to be marked. Dkt. No. 245, 10/10/17 PM Trial Tr. at 68:14-69:8, 71:15-72:10; 76:6-20. 89:5-14; Dkt. No. 246, 10/10/17 PM Sealed Trial Tr. at 3:17-19; PTX320; PTX301. Abundant evidence also showed that MeterFlow practiced the '789 patent. *See supra*, § III.A.2. NetScout also argued in

closing that "none of [PI's] licenses require marking of the patents." Dkt. No. 252, 10/13/17 AM Trial Tr. at 84:14-19.  Thus, as the Jury was instructed, PI bore the burden of proving that these products either did not practice the '789 patent or were properly marked. *Id*. at 48:7-20 ("Packet Intelligence has the burden of establishing that it substantially complied with the marking requirement" by showing that "it made reasonable efforts to ensure that its licensees, who made, offered for sale, or sold products under the '789 patent marked the products.").

As discussed above, PI did not come close to meeting this burden.  This is not surprising given PI's decision to forgo third-party discovery that, according to PI, "would be required to make any marking argument."  *See* Dkt. No. 182 at 4 (PI's Sur-Reply re MSJ Marking); *see also* Dkt. 127-4 (RFA to PI No. 6: "Exar Corporation has sold products that are covered under one or more claims of the Asserted Patents." PI's Response: "Packet Intelligence does not have access to the third party information necessary to respond to this request.").  Specifically, there was no "legally sufficient evidentiary basis for a reasonable jury to find" that PI complied with § 287(a)'s marking requirement.  *See Allstate*, 501 F.3d at 405.  PI, therefore, is not entitled to any pre-suit damages for the '789 patent.

PI should not be given a second chance to attempt to prove compliance with § 287(a).  In *Arctic Cat*, the Federal Circuit vacated the judgment as to marking and remanded the case to give the plaintiff "an opportunity to proffer evidence" as to whether unmarked licensed products practiced the asserted patents.  *Arctic Cat*, 876 F.3d at 1369.  In *Arctic Cat*, however, the district court "made clear to the parties that it would be [defendant's] burden to prove that the unmarked products fell within the patent claims." *Id*. As a result, the plaintiff "did not have a fair opportunity to develop its case regarding the [unmarked licensed products] at trial." *Id*. (plaintiff "was not on notice regarding its burden, and in fact labored under the assumption that

[defendant] had the burden of proof").

In contrast, here, this Court recognized that "at the end of the day [the marking issue] gets down to a question of who has the burden of proof" and did not take a position on where that burden lay. Dkt. No. 221, 9/18/17 Pretrial Conf. Tr. at 157:16-23. Moreover, PI was on notice that marking was "a live issue for the trial." Dkt. No. 301, 9/19/17 Pretrial Conf. Tr. at 101:13-102:14. Thus, unlike the plaintiff in *Arctic Cat*, PI was not wrongly informed that it would be NetScout's burden to prove at trial that unmarked products practiced the '789 patent, and PI had a full and fair opportunity to prove compliance with § 287(a). PI apparently made a strategic decision to avoid making any specific argument that the licensed products were actually non-infringing. PI may have chosen this strategy to avoid undermining its infringement case. Regardless why PI chose not to present any evidence showing the licensed products did not infringe, PI must now live with the consequences of its strategy. Specifically, PI's failure to do so compels JMOL on this issue. *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2018 WL 1525686, at *7 (E.D.N.Y. Mar. 27, 2018) (ordering summary judgment of no pre-suit damages when "Plaintiffs have failed to come forward with any evidence from which a reasonable finder of fact could determine that the products defendant identified do not practice the '547 Patent."); *Allstate*, 501 F.3d at 414 ("further proceedings are unwarranted because [plaintiffs] ha[ve] had a full and fair opportunity to present the case.").

### B. PI Presented No Evidence of Pre-Suit Damages From Infringement of the '751 and '725 Method Patents

Pre-suit damages are also precluded for the '751 and '725 patents. Although the '751 and '725 patents contain only method claims (and, thus, § 287(a)'s marking requirement does not apply), this Court entered summary judgment of no pre-suit indirect infringement of those

patents.[4] Dkt. No. 228 at 13 (Order on Pretrial Mots.). Thus, any pre-suit damages for infringement of the '751 and '725 patents would necessarily be based solely upon *direct* infringement. Because the '751 and '725 patent are method claims, the only direct infringement by NetScout (not others) of those patents would arise from NetScout's own use of the Accused Products and not by selling the Accused Products. The only evidence of any such direct infringement of those methods patents by NetScout is a passing mention of incidental "testing, as well as instances where [NetScout] use[s] those probes out in the field." Dkt. No. 245, 10/10/17 PM Trial Tr. at 156: 20-25; 197:5-19. PI, however, based its damages claim solely on *sales* of the Accused Products, not upon testing or incidental use.

It was undisputed that the royalty base was comprised solely of U.S. sales of the accused G10 and GeoBlade products. *See* Dkt. No. 300, 10/11/17 AM Trial Tr. at 25:2-14; (Bergman: "Based on the methodologies that I employed, I found that those methodologies resulted in a running royalty" comprised in part of "the royalty base, which is the -- either total revenue or profit or number of units."); 39:1-9 ("I came to a total accused product revenue of $408.3 million"); 61:22-62:6 ("in my opinion, the total base … is the overall revenue associated with the accused G10 and GeoBlade products, which is the $408.3 million"). PI presented no evidence of revenue or damages resulting from testing or internal use of accused products by Netscout itself. Nor did Mr. Bergman refer to any such revenues, testing, or internal use in his damages calculations. Thus, no evidence supports a claim for pre-suit damages of the '751 and '725 method patents, let alone the $3.5 million awarded by the Jury.

This failure of proof of pre-suit damages from the '751 and '725 method patents,

---

[4] *ActiveVideo Networks v. Verizon Commc'ns*, 694 F.3d 1312, 1335 (Fed. Cir. 2012) ("if the patent is directed only to method claims, marking is not required.").

combined with PI's failure to prove compliance with § 287(a)'s marking requirement with respect to the '789 patent, precludes all pre-suit damages. In short, there was no "legally sufficient evidentiary basis for a reasonable jury to find" any pre-suit damages for any Patent-in-Suit. *See Allstate*, 501 F.3d at 405. PI, therefore, cannot recover the $3.5 million the Jury awarded in pre-suit damages. Dkt. No. 237 at 5 (Verdict).

### C.   Any Enhancement Should Apply Only to Post-Filing Damages

As discussed in the concurrently-filed Motion for Judgment of No Willful Infringement As a Matter of Law, the Jury's willfulness finding and this Court's $2.8 million enhancement of damages based on that finding should be vacated. To the extent this Court denies that Motion, the $2.8 million enhancement should be reduced such that any enhancement applies only to the $2.25 million in post-filing damages. Dkt. No. 237 at 5 (Verdict). Specifically, if there is any enhancement, the approximate 50% enhancement of the total $5.75 million damages award resulting in $2.8 million in enhanced damages (Dkt. No. 305) should be reduced to 50% of the $2.25 million post-filing damages award, or $1,125,000 in enhanced damages at most.

## IV.   CONCLUSION

No legally sufficient evidence supports the pre-suit damages award. Accordingly, this Court should render judgment that Plaintiff receive no pre-suit damages and reduce any enhanced damages.

Dated: October 5, 2018

*/s/ Eric Kraeutler*
Eric Kraeutler (*pro hac vice*)
eric.kraeutler@morganlewis.com
Julie S. Goldemberg (*pro hac vice*)
julie.goldemberg@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: 1.215.963.4840
Facsimile: 1.215.963.5001

Michael J. Lyons (*pro hac vice*)
michael.lyons@morganlewis.com
Ahren Hsu-Hoffman
Texas State Bar No. 24053269
Ahren.hsu-hoffman@morganlewis.com
Michael F. Carr (*pro hac vice*)
michael.carr@morganlewis.com
Karon N. Fowler (*pro hac vice*)
karon.fowler@morganlewis.com
Thomas Y. Nolan (*pro hac vice*)
thomas.nolan@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
Facsimile: 1.650.843.4001

Adam A. Allgood
State Bar No. 24059403
aallgood@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: 1.713.890.5000
Facsimile: 1.713.890.5001

**ATTORNEYS FOR DEFENDANTS NETSCOUT SYSTEMS, INC., TEKTRONIX COMMUNICATIONS, AND TEKTRONIX TEXAS, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 5, 2018, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented to electronic service.

                                                      */s/ Eric Kraeutler*
                                                     Eric Kraeutler