IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PACKET INTELLIGENCE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:16-CV-00230-JRG |
| NETSCOUT SYSTEMS, INC., | § | |
| TEKTRONIX COMMUNICATIONS, | § | |
| TEKTRONIX TEXAS, LLC, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Packet Intelligence LLC's Motion for A Finding of Exceptional Case and Award of Attorneys' Fees (the "Motion"). (Dkt. No. 309.) Having considered the briefing, case record, and relevant authorities, the Court is of the opinion that the Motion should be and hereby is **DENIED** for the reasons set forth herein.

### I. BACKGROUND

Packet Intelligence LLC ("PI") sued Defendants NetScout Systems, Inc., Tektronix Communications, and Tektronix Texas, LLC (collectively "NetScout") for patent infringement on March 15, 2016. (Dkt. No. 1.) PI alleged that NetScout willfully infringed Claims 10 and 17 of U.S. Patent No. 6,665,725; Claims 1 and 5 of U.S. Patent No. 6,839,751; and Claims 19 and 20 of U.S. Patent No. 6,954,789 (collectively the "Asserted Claims").[1] (*Id.*) NetScout asserted several defenses, including invalidity under 35 U.S.C. §§ 101, 102, 103, and 112; failure to properly name all inventors under 35 U.S.C. § 102(f); inequitable conduct; and unclean hands. (Dkt. No. 205 at

---

[1] In the complaint, PI also alleged infringement of U.S. Patent Nos. 6,771,646 and 6,651,099, but dropped those patents before trial. (Dkt. No. 232.)

1

9–11.) The case proceeded to trial and the jury returned a verdict in favor of PI, finding that the Asserted Claims were willfully infringed, none of the Asserted Claims were invalid, and that PI was entitled to damages in the amount of $5.75 million as a running royalty. (Dkt. No. 237.) Following submission of the evidence to the jury, the Court conducted a bench trial as to the equitable issues and concluded that NetScout had failed to show that PI's claims were barred under the doctrines of either unclean hands or inequitable conduct. (Dkt. Nos. 242, 306.) The Court entered final judgment on September 7, 2018 designating PI as the prevailing party. (Dkt. No. 307 at 2.) PI now moves for a finding of exceptionality and attorneys' fees under 35 U.S.C. §285. (Dkt. No. 309.)

## II. LEGAL STANDARD

A district court "may award reasonable attorney fees to the prevailing party" if the case is "exceptional." 35 U.S.C. § 285. A case is "exceptional" if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *see also Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528, 2018 WL 1536874, at *11 (E.D. Tex. Mar. 29, 2018) ("Accordingly, the proper scope of the exceptionality inquiry is the whole of patent litigation— the actions of the defendant are to be compared relative to the ordinary patent litigation defendant."). Whether a case is exceptional is within the sound discretion of the district court. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014) ("For reasons we explain in *Octane*, the determination whether a case is 'exceptional' under § 285 is a matter of discretion.").

Factors that may support a finding of exceptionality include, but are not limited to, "bad faith litigation, objectively unreasonable positions, inequitable conduct before the [Patent and Trademark Office], litigation misconduct, and (in the case of an accused infringer) willful infringement." *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, J., sitting by designation). However, "the mere fact that the losing party made a losing argument is not a relevant consideration." *Id.* at *4. The Supreme Court did not intend the "totality of the circumstances standard [to be] . . . an invitation [for] a 'kitchen sink' approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees." *Id.* at *3. "[R]ather, the focus must be on arguments that were frivolous or made in bad faith." *Id.* at *4.

Significantly, sanctionable conduct does not automatically warrant a finding of exceptionality. *Octane*, 572 U.S. at 556. "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* For example, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* Litigants must establish their entitlement to attorney fees by a preponderance of the evidence. *Octane*, 572 U.S. at 557.

Lastly, as recognized by the Supreme Court, it is "the district court . . . that lives with the case over a long period of time" and as such, "is better positioned to decide if the case is [truly] exceptional." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014).

## III. DISCUSSION

PI moves for attorneys' fees on two grounds: (1) NetScout pursued exceptionally meritless litigation positions before, during, and after trial; and (2) NetScout litigated this case in an unreasonable manner. (Dkt. No. 309.)

PI asserts that attorneys' fees are warranted because NetScout's defenses had no basis in law or fact. Specifically, PI argues that NetScout submitted no evidence to support its inventorship and inequitable conduct defenses; withdrew a failed license defense in response to PI's summary judgment motion; filed frivolous motions *in limine*; and pursued a meritless post-trial motion under Section 101, along with a litany of other objectively unreasonable conduct.[2]

PI also alleges that NetScout's litigation conduct "unreasonably multiplied proceedings." (*Id.* at 2.) For instance, NetScout failed to produce core technical documents, financials, and source code in a timely manner pursuant to the local rules. These repeated delays required PI to seek the Court's intervention, engage in multiple source code review sessions, and conduct additional Rule 30(b)(6) depositions. PI also argues that NetScout asserted "more than 95 prior art references" that "contained approximately 4,000 pages of charts" along with "approximately 8,500 additional pages of charted prior art references taken from two earlier cases over the same patents," but ultimately relied on only one reference at trial. (*Id.* at 14–15.) According to PI, such conduct forced the parties to engage in "prolonged and unnecessary litigation" and "supports an exceptional case finding." (*Id.* at 15.)

---

[2] These include: (1) opposing a motion for an ongoing running royalty because "the jury's award 'sufficiently compensated PI for past and future infringement'" "even though the jury's verdict form specifically indicated it awarded a running royalty;" and (2) opposing PI's motion for pre-judgment interest "entirely—even though—as the Court noted, when granting the motion, that PI 'makes its request from a position of precedential strength.'" (Dkt. No. 309 at 8–12.)

PI's Motion is best described as taking what Judge Dyk referred to as the "kitchen sink" approach. *Stragent*, 2014 WL 6756304, at *3. This approach largely faults NetScout for making losing arguments. However, as one court succinctly put it: "[e]very case will have a loser" and whether a case is exceptional will depend on whether it "stands out from the others." *Id.* (summarizing caselaw post-*Octane*). PI has failed to make an adequate showing that NetScout's conduct stands out. For example, PI makes much of the fact that this Court adopted its proposed findings of fact and conclusions of law, and that those findings state that NetScout presented no evidence of intent to deceive or materiality to support its inequitable conduct defense. (Dkt. No. 309 at 3–5.) However, NetScout did present evidence on those elements. (Dkt. No. 296 (NetScout's Proposed Findings of Fact and Conclusions of Law).) The Court simply found such evidence unpersuasive. Similarly, PI claims that NetScout failed to submit any evidence to support its inventorship defense: "NetScout never addressed the testimony and supporting exhibits from the inventors;" "never even told the jury which allegedly missing inventors should have been named as an inventor;" and failed to "identify, on an element-by-element basis, where RMON Working Group papers showed the patented claims." (Dkt. No. 309 at 6.) Again, NetScout did submit evidence on that issue, but such evidence did not persuade the fact finder. NetScout introduced testimony that the RMON Working Group devised the essential features of the asserted claims. (Dkt. No. 296.) Contrary to PI's assertions, NetScout was not required to identify a specific inventor that should have been named on the patent; rather "[p]er the straightforward statutory language," it only had to show that the "named inventors 'did not [themselves] invent the subject matter sought to be patented.'" (Dkt. No. 319 at 6 (internal citation omitted).) PI's remaining arguments fail for similar reasons. The other conduct PI identifies as "exceptional"— filing motions *in limine* that merely "state the law," asserting a large number of prior art references

at the beginning of the case, and engaging in discovery disputes—strike the Court as ones that are typical of any ordinary patent defendant. *See Whirlpool*, 2018 WL 1536874, at *11 (noting that "the actions of the defendant are to be compared relative to the ordinary patent litigation defendant"). While *limine* motions that ask the Court to essentially follow the rules of evidence and procedure are rarely granted, a majority of practitioners nonetheless seem to regularly ask for such. If this served as a basis for exceptional case status, then most cases would be exceptional. This is clearly not what Congress intended.

At the end of the day, this was a case where "[t]he parties went head-to-head and the determination ultimately turned on the jury's assessment of the evidence and the credibility of witnesses." *Barry v. Medtronic*, 250 F. Supp. 3d 107, 122 (E.D. Tex. 2017). "Attorneys' fees in patent cases are reserved for rare and unusual circumstances." *Stragent*, 2014 WL 6756304, at *3. The key question is whether NetScout's positions and conduct stood out from the norm. They did not in this case. Accordingly, taking all factors into account and in light of the Court's extensive experience with both parties, the Court does not find that this is an exceptional case under § 285.

## IV. CONCLUSION

For the reasons set forth above, PI's Motion for A Finding of Exceptional Case and An Award of Attorneys' Fees, (Dkt. No. 309), is hereby **DENIED**.

**So ORDERED and SIGNED this 15th day of April, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE