IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PACKET INTELLIGENCE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:16-CV-00230-JRG |
| | § | |
| NETSCOUT SYSTEMS, INC., | § | |
| TEKTRONIX COMMUNICATIONS, | § | |
| TEKTRONIX TEXAS, LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants NetScout Systems, Inc. and NetScout Systems Texas, LLC's (formerly known as Tektronix Texas, LLC d/b/a Tektronix Communications) (collectively, "NetScout" or "Defendants") Motion Under Federal Rule of Civil Procedure 59(e) to Alter or Amend the Amended Final Judgment (the "Motion"). (Dkt. No. 401). Having considered the Motion, the related briefing, and the applicable law, the Court finds that the Motion should be and hereby is **DENIED** for the reasons set forth herein.

**I.    BACKGROUND**

This case was tried to a jury between October 10, 2017, and October 13, 2021. Following the return of the jury's verdict, the Court entered its Final Judgment on September 7, 2021, which awarded Plaintiff Packet Intelligence LLC ("PI"): $5,750,000 in compensatory damages as a running royalty, enhanced damages in the amount of $2,800,000, and set an ongoing royalty rate of 1.55% of the revenue received by Defendants produced by the post-verdict infringing conduct of the accused G10 and GeoBlade products through the life of the patents-in-suit. (Dkt. No. 307).

On appeal, the Federal Circuit reversed the award of the pre-suit compensatory damages and vacated "any enhancement thereof." *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1313 (Fed. Cir. 2020) *cert. denied*, No. 20-1289, 2021 WL 1520847 (Apr. 19, 2021). The Court's Final Judgement—including the imposition of the 1.55% ongoing royalty rate—was affirmed "in all other respects." *Id.* at 1303. Accordingly, the sole issue raised by the Federal Circuit's mandate was the removal of pre-suit damages and the amount of the enhancement, if any, tied to the reversed pre-suit damages award. (Dkt. No. 396 at 4). The parties submitted briefing on this issue, and the Court removed the award of pre-suit damages and vacated $1.7 million of the enhancement tied to pre-suit damages in accordance with the Federal Circuit's mandate. (*Id.* at 17–20).

However, NetScout raised an additional argument on remand and asserted that the Court should amend "the royalty rate that will apply *going forward* based on a change in circumstances." (Dkt. No. 372 at 8) (emphasis added). Notably, NetScout argued that it "ha[d] not waived its right to seek this *prospective relief*." (*Id.*) (emphasis in original). The Court found NetScout's arguments persuasive and exercised its discretion to amend the equitable remedy of the ongoing royalty rate from 1.55% to 1.355% on a prospective basis starting from May 4, 2022—the date of entry of its Amended Final Judgment. (Dkt. No. 396 at 20–24; Dkt. No. 397 at ¶¶ 9–10). NetScout filed the instant Motion requesting that the Court alter the start date of the reduced ongoing royalty rate to October 23, 2020—the date on which the Federal Circuit's issued its mandate. (Dkt. No. 401 at 4).

## II.    LEGAL STANDARD

Under Rule 59(e), a party can move the Court to amend an order or judgment within 28 days of entry. Fed. R. Civ. P. 59(e). "Rule 59(e) is properly invoked 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002) (internal citations omitted). A motion to amend an order or judgment "is not

2

the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Given that "specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal citations omitted). Accordingly, relief under Rule 59(e) is appropriate only when (1) there is a manifest error of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) there would otherwise be manifest injustice; or (4) there is an intervening change in controlling law. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). As a result, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

### III.  DISCUSSION

NetScout argues that reconsideration is appropriate because "the start date for the reduced royalty currently provided by the [Amended Final Judgment], May 4, 2022, has no relationship to the changed circumstances that this Court found justified a new rate." (Dkt. No. 401 at 4). In NetScout's view, the Court should have reset the royalty rate to coincide with the date of the Federal Circuit's mandate because such is the date "when circumstances change[d]" to justify the imposition of a lower rate. (*Id.* at 5). NetScout notes that if the Court adjusts the applicable date of its amended ongoing royalty, "NetScout will be able to benefit from the lower rate for a period of approximately 20 months, from October 23, 2020, through the expiration of the patents on June 27, 2022. But if the reduced ongoing royalty rate only starts on May 4, 2022, the date of entry of the [Amended Final Judgment], NetScout will have less than two months to benefit from the lower rate." (*Id.*). NetScout thus asserts that the Court made "a manifest error that will result in manifest

injustice" by exercising its discretion to award NetScout precisely the relief it sought—adjustment of the ongoing royalty on a "*purely prospective*" basis. (*Id.* at 4; Dkt. No. 372 at 9).

PI notes that "NetScout raised the issue of modifying the royalty rates in . . . its post-appeal briefing but never requested a specific . . ." date that any modification should take effect. (Dkt. No. 406 at 3). PI argues that the Court should deny the Motion because NetScout could have—but failed—to request or argue for the specific effective date of October 23, 2020, and a Rule 59(e) "motion is not the proper vehicle for rehashing evidence, legal theories or arguments **that could have been offered or raised** before the entry of judgment." (*Id.* at 2–3) (quoting *Templet*, 367 F.3d at 478–79 (emphasis added)). PI further argues that NetScout cannot make the required showing of manifest injustice considering that "NetScout's briefing argued for prospective relief, which this Court ultimately ordered."[1] (*Id.* at 4).

The Court finds PI's arguments persuasive. NetScout had ample opportunity in its four separate briefs to raise the argument that the effective date of any amendment to the ongoing royalty should be October 23, 2020—the date of entry of the Federal Circuit's mandate. However, NetScout failed to raise such arguments—and instead argued that it was seeking "*purely prospective*" relief applicable only to "future sales." (Dkt. No. 375 at 9; Dkt. No. 375 at 3). As discussed above, a Rule 59(e) Motion is not the proper vehicle to rehash "arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478–79. Accordingly, the NetScout's Motion is improper and should be denied.

Additionally, the Court notes that it was well within its discretion to modify the ongoing royalty rate and make such amended rate effective on a prospective basis. *See Amado v. Microsoft*

---

[1] *See also* (Dkt. No. 372 at 8–9) ("NetScout has not waived its right to seek this *prospective relief*," . . . and "the equitable relief sought by NetScout is purely prospective.") (emphasis in original); (Dkt. No. 375 at 3) (arguing that "the Court should exercise its discretion to reset the ongoing royalty to 1.16% for *future sales*") (emphasis added).

4

*Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) ("The court may relieve a party . . . from a final judgment, order, or proceeding . . . [if] applying it *prospectively* is no longer equitable. . . .") (emphasis in original). The authority relied on by NetScout asserts no requirement that the effective date of equitable relief must be retroactive to a specific event. *See Chrimar Systems v. Ale USA Inc.*, 785 Fed. App'x 854, 856–57 (Fed. Cir. 2019). Further, resetting the effective date of the amended ongoing royalty to the October 23, 2020 date of the Federal Circuit's mandate would run counter to NetScout's arguments which advocated for a "downward adjustment" to the royalty rate because the claims of the "patents face potential *imminent* cancelation." (Dkt. No. 369 at 10). NetScout's arguments requested that the Court consider all "changed circumstances"—including present ongoing events developing before the PTAB—thus NetScout cannot establish any "manifest error or law of fact" or "manifest injustice" in reducing the ongoing royalty and making such reduction effective on a prospective basis. *Acorn Semi, LLC v. Samsung Elecs. Co.*, No. 2:19-CV-00347-JRG, 2022 WL 254354, at *1 (E.D. Tex. Jan. 25, 2022) (*citing Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).

IV.   **CONCLUSION**

For the reasons stated above, the Court finds that NetScout's Motion Under Federal Rule of Civil Procedure 59(e) to Alter or Amend the Amended Final Judgment (Dkt. No. 401) should be and hereby is **DENIED**.

**So Ordered this**
**Jun 21, 2022**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE