IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PACKET INTELLIGENCE LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:16-CV-00230-JRG |
| | § | |
| NETSCOUT SYSTEMS, INC., | § | |
| TEKTRONIX COMMUNICATIONS, | § | |
| TEKTRONIX TEXAS, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions and accompanying briefing filed by Plaintiff Packet Intelligence LLC ("PI") and Defendants NetScout Systems, Inc. and NetScout Systems Texas, LLC (formerly known as Tektronix Texas, LLC d/b/a Tektronix Communication) (collectively, "NetScout"):

1. **PI's Motion to Enforce Liability on Supersedeas Bond** (the "Motion to Enforce") and the related briefing (Dkt. Nos. 398, 403, 405, and 407);

2. **NetScout's Motion to Approve Supersedeas Bond and Stay Enforcement of Judgment** (the "Motion to Stay Enforcement") and the related briefing (Dkt. Nos. 400, 402, 404, and 409); and

3. **NetScout's Motion to Substitute Supersedeas Bond for One of a Reduced Amount** (the "Motion to Substitute") and PI's response thereto (Dkt. Nos. 408 and 412).

Having considered the motions, the related briefing, relevant authorities, and counsel's oral arguments, the Court finds that the Motion to Enforce (Dkt. No. 398) should be and hereby is

**GRANTED-AS-MODIFIED** herein, the Motion to Stay Enforcement (Dkt. No. 400) is **DENIED**, and the Motion to Substitute (Dkt. No. 408) is **DENIED-AS-MOOT**.

## I.   BACKGROUND

PI filed its Complaint against NetScout asserting infringement of U.S. Patent Nos. 6,665,725 (the "'725 Patent"), 6,939,751 (the "'751 Patent"), and 6,954,789 (the "'789 Patent") (collectively, the "Asserted Patents") on March 15, 2016. (Dkt. No. 1.)  The case was tried to a jury beginning on October 10, 2017.  The jury returned a verdict on October 13, 2017 that NetScout willfully infringed at least one claim of the Asserted Patents, that the asserted claims of the Asserted Patents were not invalid, and that PI was entitled to a $3.5 million award for pre-suit infringement and a $2.25 million award for post-suit infringement, totaling $5,750,000.  (Dkt. No. 237.)  The jury indicated that such sums were intended as a running royalty.  (*Id.* at 6.)  The jury also found NetScout's infringement to be willful.  (*Id.* at 3.)

On September 7, 2018, the Court entered Final Judgment.  (Dkt. No. 307.)  The Final Judgment awarded PI: $5,750,000 in compensatory damages as a running royalty and enhanced damages in the amount of $2,800,000.  The Final Judgment also set an ongoing royalty rate of 1.55 percent of the revenue received by NetScout, which was generated by the post-verdict infringing conduct of the accused G10 and GeoBlade products through the life of the Asserted Patents, the last of which expired in June 2022.  (*Id.*)

NetScout filed a Notice of Appeal with the Federal Circuit on June 12, 2019 (the "First Appeal").  (Dkt. No. 347.)  In the First Appeal, NetScout challenged the determinations of eligibility and validity of the asserted claims, infringement, pre-suit damages, and NetScout's willfulness.  (*Id.*)  In this connection, the Court granted NetScout's Unopposed Motion to Approve Supersedeas Bond and Stay Enforcement of Judgment on July 5, 2019.  (Dkt. No. 351.)

On July 14, 2020, the Federal Circuit issued its opinion affirming the judgment of the district court as to infringement, validity, and willfulness.  *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1316 (Fed. Cir. 2020).  However, the Federal Circuit held that "[t]he district court's award of pre-suit damages is reversed, and ***any enhancement thereof*** is vacated." *Id.* at 1316 (emphasis added).  The Federal Circuit "affirm[ed] the district court's judgment in all other respects" other than the award of pre-suit damages and the enhancement related thereto.  *Id.* at 1303.

Petitions for Panel Rehearing and Rehearing *En Banc* were filed and subsequently denied. (Dkt. No. 356.)  The Federal Circuit issued its mandate on October 23, 2020.  (Dkt. No. 357.) NetScout later filed a Petition for Writ of Certiorari to the Supreme Court, which was denied.  (Dkt. No. 359-1 at 4.)

Following the First Appeal, the parties briefed their respective positions on the amount of enhanced damages tied to the pre-suit jury award vacated by the Federal Circuit, along with certain issues raised by NetScout concerning the running royalty.  (*See* Dkt. Nos. 367, 368, 369, 372, 373, 375, 376, 377, and 378.)  Complying with the Federal Circuit's mandate, the Court issued an order eliminating the $3.5 million pre-suit damages award and removing $1,704,347.83 of the enhancement (proportionally tied to the reversed $3.5 million pre-suit damages award).  (Dkt. No. 396.)  The Court, finding NetScout's arguments persuasive, also exercised its discretion to amend the ongoing royalty rate from 1.55% to 1.355% (eliminating the impact of the pre-suit damages award as a factor in the ongoing royalty rate).  (*Id.*)  The Court then issued an Amended Final Judgment implementing these changes.  (Dkt. No. 397) (the "Amended Final Judgment").

NetScout filed a motion for reconsideration under Fed. R. Civ. P. 59(e) to alter or amend the Amended Final Judgment, which the Court denied on June 22, 2022.  (Dkt. No. 411.)  The

Court found that NetScout had ample opportunity in its prior briefing (but failed) to raise its new argument that the effective date of any amendment to the ongoing royalty should be October 23, 2020—the date of the Federal Circuit's mandate.  (*Id.* at 4.)  The Court also found that it was within its discretion to modify the ongoing royalty rate and make it effective on a prospective basis (i.e., from May 4, 2022), and that new arguments first presented in a motion for reconsideration are improper *per se*.  (*Id.* at 4–5.)

Meanwhile and elsewhere, *inter partes* review ("IPR") petitions filed by third parties Juniper Networks, Inc. and Palo Alto Networks, Inc. challenging the Asserted Patents were instituted in September 2020, two years after this Court entered Final Judgment in this case.  (Dkt. No. 380 at 3.)  On September 8 and 9, 2021, the Patent Trial and Appeal Board ("PTAB") issued Final Written Decisions ("FWDs") finding each of the asserted claims in the Asserted Patents unpatentable as obvious under 35 U.S.C. § 103.  (Dkt. No. 379.)  NetScout filed an opposed motion to dismiss and enter final judgment in its favor or, in the alternative, to stay the case based on the PTAB's FWDs.  (Dkt. No. 380.)  The Court denied NetScout's motion on May 4, 2022, noting that unreviewed PTAB decisions are not final and cannot nullify a final judgment of a district court[1] and finding that all factors weighed against granting a stay.  (Dkt. No. 396.)

On July 20, 2022, NetScout filed another Notice of Appeal with the Federal Circuit (the "Second Appeal").  (Dkt. No. 414.)  In the Second Appeal, NetScout challenges the award of enhanced damages and the ongoing royalty rate, including whether the effective date of any amended royalty rate should be October 23, 2020.  NetScout also argues, in the Second Appeal, that the FWDs issued in the third party IPRs should have immediate issue-preclusive effect in this case, requiring this Court's judgment be vacated.  NetScout, in essence, seeks to upend the entire

---

[1] As to validity and infringement, this Court's Final Judgment had been affirmed by the Federal Circuit when the FWDs issued.

adjudicative process overseen by this Court and the Federal Circuit by virtue of IPRs filed by third parties, and decided by the PTAB years after the jury's verdict was returned and accepted in this case.

The supersedeas bond, first approved by the Court on July 5, 2019, has remained in place through the present.  NetScout has yet to satisfy any portion of the Amended Final Judgment.

## II.    LEGAL STANDARD

Rule 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security.  The stay takes effect when the court approves the bond or other security and ***remains in effect for the time specified in the bond*** or other security."  FED. R. CIV. P. 62(b) (emphasis added).  The text of the rule does not provide for a mandatory stay upon posting of a supersedeas bond, but courts, including this one, have recognized that in an initial substantive appeal, "[a] party taking an appeal from the district court is entitled to a stay of any money judgment, 'as a matter of right,' upon posting a supersedeas bond sufficient to secure the judgment." *Mondis Tech. Ltd. v. Chimei Innolux Corp.*, 2012 WL 1554645, at *8 (E.D. Tex. Apr. 30, 2012).  Thereafter, the Court has discretion to grant a stay or to order enforcement on a judgment, even where additional appeals may be pending. *See Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 930 F.2d 1572 (Fed. Cir. 1991).

Along those lines, the Court is within its discretion to order satisfaction of damages that are uncontested and absolute following a first appeal, even when a second appeal is pending. *King Instruments Corp. v. Otari Corp.*, 814 F.2d 1560, 1563 (Fed. Cir. 1987).  Under the mandate rule, "issues actually decided [on appeal]—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008).  Thus, issues

already decided by the appeals court and precluded from further consideration cannot be contested and are therefore absolute.

Rule 69 provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located . . . ."  FED. R. CIV. P. 69(a)(1).  When liability is affirmed on appeal, a surety is liable on a bond for undisputed amounts, even on remand.  In particular, the surety is liable "when the question on remand is not whether a party will receive damages, but merely how the damages will be calculated."  *Beatrice*, 930 F.2d at 1576.  After such remand, the Court **may** order execution or enforcement on the bond.  *Id.* at 1577.

## III.   DISCUSSION

### A.  NetScout's Motion to Stay Enforcement Should Be Denied

First, the Court notes that Rule 62(a) does not provide a basis to grant NetScout's Motion to Stay Enforcement or to deny PI's Motion to Enforce.  The rule states that "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."  FED. R. CIV. P. 62(a).  Notwithstanding this Court's prior order setting the effective date for the Amended Final Judgment as September 7, 2018, the instant Order is well beyond the 30-day period after Amended Final Judgment.  Thus, Rule 62(a) is not implicated.

Regarding Rule 62(b), NetScout argues that it is entitled to a stay of enforcement of the judgment pending the Second Appeal "as a matter of right."  (Dkt. No. 400 at 4 (citing *Mondis Tech. Ltd. v. Chimei Innolux Corp.*, 2012 WL 1554645, at *8 (E.D. Tex. Apr. 30, 2012); *Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theaters, Inc.*, 87 S. Ct. 1, 3 (1966); *Kennedy v. E.I. DuPont De Nemours & Co.*, 2006 WL 8441046, at *1 (E.D. Tex. Feb. 13, 2006)).)  PI argues that the cases NetScout relies upon are inapposite because they involve posting a bond to stay

proceedings so that the losing party may make an "initial substantive appeal." (Dkt. No. 402 at 6.) PI contends that the mandate rule forecloses further consideration on the monies owned by NetScout as affirmed in the First Appeal. (*Id.* at 9.) PI also relies on *King* to assert that it is within the Court's discretion to permit execution of a portion of the judgment that is affirmed even when different issues remain on appeal. (*Id.* at 9–12.)

The Court declines to extend Rule 62(b), as NetScout desires, to provide for a stay "as a matter of right" to situations beyond an initial substantive appeal. To do so would undermine the principle of finality of judicial decisions. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995); *see also Gordon v. United States*, 117 U.S. 697, 702 (1864) (holding that judgments of Article III courts are "final and conclusive upon the rights of the parties"). At some point, matters settled by judicial determinations must be set in stone, and the results flowing from them (i.e., monetary awards) must become collectable. The Court does not condone serial stays while subsequent appeals are pursued. Instead, complying with the Federal Circuit's opinion and mandate, this Court entered an Amended Final Judgment after the award of post-suit damages of $2.25 million, the corresponding enhancement, and the ongoing royalty had been affirmed. (Dkt. No. 397.) NetScout received its stay on the judgment "as a matter of right" in June 2019 by posting the original bond while the First Appeal was pending, but the Court does not find that NetScout is entitled to another stay under these facts.

Although the Second Appeal is currently pending, the Federal Circuit has not vacated or otherwise nullified its mandate as to the First Appeal. Accordingly, the affirmed portion of this Court's Final Judgment (Dkt. No. 307), as reflected in the Amended Final Judgment (Dkt. No. 397), is final and enforceable.

### B. PI's Motion to Enforce Should Be Granted-As-Modified

PI requests that the Court issue an order directing NetScout's surety, RLI Insurance Company, to immediately pay PI because NetScout has stated that it will not voluntarily pay PI any of the amounts owed as set forth in the Court's Amended Final Judgment (Dkt. No. 397). (Dkt. No. 398 at 7, 13.)  PI contends that Rule 65.1 provides an "expedited procedure for executing on a supersedeas bond . . . [which] allows [creditors] to collect on the supersedeas bond by merely filing a motion."  (*Id.* at 5 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 311–12 (1996)).)  PI cites out-of-circuit authority to assert that the conditions of enforcement on a supersedeas bond are to show that (1) the alleged sureties are sureties as contemplated under Rule 65.1, and (2) the circuit court entered final judgment in the moving party's favor and issued its mandate.  (Dkt. No. 398 at 6.)

NetScout argues that the Federal Circuit's judgment is not final and, thus, it would be a violation of Rule 62(b) to grant PI's Motion to Enforce.  (Dkt. No. 403 at 9.)  NetScout cites several bases on which it contests the finality of the Amended Final Judgment.  First, NetScout argues that remand proceedings before this Court are not yet complete as NetScout's motion under Rule 59(e) is still pending.[2]  (*Id.* at 8.)  Next, NetScout states that it plans to challenge the enhanced damages award and ongoing royalty rate, which became the subject of the Second Appeal.  (Dkt. No. 400 at 2; Dkt. No. 403 at 3–4.)  Incredibly, NetScout further contends that it does not owe PI any damages at all in view of the Patent Office's FWDs invalidating all asserted claims.  (Dkt. No. 404 at 1.)  The Court finds NetScout's arguments uniformly unpersuasive.

NetScout attempts to distinguish *King* from this case.  In *King*, the Federal Circuit held that the district court did not abuse its discretion in ordering execution on portions of a final judgment

---

[2] The Court denied NetScout's Motion under Federal Rule of Civil Procedure 59(e) to Alter or Amend the Amended Final Judgment (Dkt. No. 401) on June 22, 2022.  (Dkt. No. 411.)

where the damages were "uncontested and absolute."  NetScout argues that in this case all damages awarded by the Amended Final Judgment remain contested and are not absolute.  (Dkt. No. 404 at 1.)  NetScout instead relies on *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) and *Chrimar Sys. Inc. v. ALE USA Inc.*, 785 Fed. App'x 854 (Fed. Cir. 2019) where intervening Patent Office decisions, ***which had been affirmed by the Federal Circuit***, had a preclusive effect on parallel district court proceedings that were still ***pending***.  (Dkt. No. 404 at 2; Dkt. No. 407 at 4.)

In *Fresenius*, a split panel at the Federal Circuit concluded that a district court's judgment in a patent infringement case was not sufficiently final to be immune to the effect of an intervening final decision in reexamination proceedings at the Patent Office, which found all asserted claims invalid.  721 F.3d at 1341.  In that case, the district court's judgment had been appealed a first time, and the Federal Circuit affirmed the determination that the claims were not invalid but remanded to the district court to reconsider its injunction and post-verdict damages.  *Id.* at 1332. While on remand, the Patent Office's invalidation decision issued and was affirmed by the Federal Circuit, and thus became final.  The panel found that the Federal Circuit's previous remand decision was not sufficiently final (indeed, the Federal Circuit had "set the district court's judgment aside in the first appeal"), and did not preclude application of the Patent Office's invalidation decision, which had been affirmed, because the instant case was still pending.  *Id.* at 1341–42.

Such is not the case here.  The Federal Circuit's mandate in the First Appeal left nothing for this Court to do other than to remove the pre-suit damages and any enhancement tied thereto. The Court carried this out in the Amended Final Judgment by subtracting out the pre-suit damages and the corresponding (i.e., proportional) enhancement, and by adjusting the ongoing royalty appropriately.  Unlike the Federal Circuit's remand in *Fresenius*, which left several aspects of the

district court's original judgment unresolved, including determining royalties on certain products and injunctive relief, the Federal Circuit's opinion here gave the District Court specific instructions which it has carried out, leaving nothing undone.  Unlike *Fresenius*, the Federal Circuit did not remand to this Court for further proceedings to reconsider an injunction and reconsider royalty awards.  *Compare Fresenius USA, Inc. v. Baxter Intern., Inc.*, 582 F.3d 1288, 1304 (Fed. Cir. 2009) ("*Fresenius I*") *with Packet Intel.*, 965 F.3d at 1316.

In *Chrimar*, a non-precedential panel opinion, the Federal Circuit affirmed, on a first appeal, a jury verdict awarding damages and ongoing royalties for infringement on three patents but remanded a claim construction issue on one patent.  785 Fed. App'x at 855.  Like *Fresenius*, substantive issues remained to be decided on remand by the district court in *Chrimar*, including a "live counterclaim for infringement of the [one] patent" and a covenant not to sue from Chrimar that allegedly did not extend to ALE's customers and distributors.  *Id.*  While on remand, the Federal Circuit affirmed a PTAB finding of unpatentability of all claims relevant to the pending case, which it issued concurrently with the second appeal.  *Id.*  The *Chrimar* court held that the affirmance of the PTAB decisions of unpatentability of the patent claims at issue in the case had "an immediate issue-preclusive effect on any ***pending*** or ***co-pending actions*** involving the patent[s]."  *Id.* (quoting *XY, LLC v. Trans Ova Genetics L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (emphasis added)).  The court found the case was still pending in light of ALE's "substantial argument" that it still had a live counterclaim for noninfringement.  *Id.* at 856.  Therefore, the *Chrimar* court found that the PTAB's affirmed unpatentability determinations must be given effect, and it vacated the final judgment of the district court.  *Id.* at 858.

This case is also distinguishable from *Chrimar*.  Unlike *Chrimar*, where the case was still pending because of an unresolved counterclaim for noninfringement of one of the patents-in-suit,

10

there are no remaining issues of law or fact requiring this Court's adjudication.  The court in *Chrimar*, following *Fresenius*, recognized that a case is "pending" when it is not yet final in the sense that "the litigation [is] entirely concluded so that [the] cause of action [against the infringer] was merged into a final judgment . . . one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Id.* at 856 (citing *Fresenius*, 721 F.3d at 1341).  The Amended Final Judgment in this case is final as it implements the award affirmed by the Federal Circuit's mandate, which remains effective and has not been vacated.  (*See* Dkt. Nos. 307, 353, 357, 397.)  Also different from *Chrimar*, this Court **did** recognize that it had discretion to deny the requested stay in light of the PTAB's intervening decisions.  (*See* Dkt. No.396 at 25–31; *see also Chrimar*, 785 Fed. App'x at 857.)

As NetScout recognizes, the PTAB's FWDs in this case cannot have an issue-preclusive effect on any pending action until they are affirmed by the appellate court.  *XY*, 890 F.3d at 1294 ("That affirmance renders final a judgment on the invalidity of the [patent], and has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent."); (Dkt. No. 403 at 10; Dkt. No. 404 at 5.)  Before that event (i.e., a possible affirmance by the Federal Circuit), the FWDs cannot alter the Amended Final Judgment of this Court.  Accordingly, the Court is bound by the Federal Circuit's previous mandate.  The FWDs have not been affirmed on appeal and are not final judgments with respect to the patents and claims tried to this Court in 2017.  As such, they cannot contravene the Federal Circuit's mandate.  (*See* Dkt. No. 396 at 24, n.12.)  Even if such judgments *were* final, the Court is skeptical that its resulting effect on on this Court's Amended Final Judgment would be any different because this case is no longer pending.  The Federal Circuit, in *XY*, explicitly stated that "[w]e do not find, as the Dissent states, that 'in the event of conflict the administrative agency's decision "moots" the district court's decision.'"  890

F.3d at 1294.  The PTAB's FWDs here cannot moot the affirmed adjudication of this Court which is subject to the Federal Circuit's mandate.  To do otherwise makes the mandate rule a paper tiger.

Under the mandate rule, the issues decided in the First Appeal are foreclosed from further consideration.  *Amado*, 517 F.3d at 1360.  The Federal Circuit affirmed the post-suit damage award and corresponding enhancement thereof.  The ongoing royalty was also affirmed.  NetScout asserts that "the Federal Circuit did not affirm the [Court's initial Final Judgment]."  (Dkt. No. 403 at 3.) This is not an accurate representation.  The Federal Circuit remanded with instructions to vacate *only* the portion of the enhancement tied to the reversed pre-suit damages, if any:

> Because the district court erred in denying NetScout's motion for judgment as a matter of law on pre-suit damages, we reverse the district court's pre-suit damages award and vacate the court's enhancement of that award.  ***We affirm the district court's judgment in all other respects***.
>
> . . .
>
> Accordingly, the judgment of the district court is affirmed as to infringement, validity, and willfulness.  The district court's award of pre-suit damages is reversed, and any enhancement thereof is vacated.

*Packet Intel.*, 965 F.3d at 1303, 1316 (emphasis added).  Thus, the Federal Circuit expressly affirmed this Court's finding of infringement, validity, and willfulness and declined to vacate the entirety of the enhancement award.

The Court, recognizing that the mandate rule precludes reconsideration of any issue within the scope of the judgment subject to the mandate, carried out the Federal Circuit's directives to remove pre-suit damages and its corresponding enhancement and adjusted the ongoing royalty rate in accordance with that reduction.  (Dkt. No. 396.)  The Court also rejected NetScout's request to reopen the entire issue of damages, finding it improper to dismiss PI's causes of action in light of the FWDs.  (*Id.* at 25–26.)

12

Accordingly, the Court finds that the portions of its Final Judgment (Dkt. No. 307) affirmed by virtue of the Federal Circuit's mandate in the First Appeal, as reflected in the Amended Final Judgment (Dkt. No. 397), are final and enforceable.  At issue here is the integrity of an Article III Court's final judgment, which has been affirmed in all respects (save those noted above) and which judgment has survived a request for *en banc* review at the circuit and a petition for certiorari to the Supreme Court.  Such judgment has been subject to the Federal Circuit's mandate for some time.  The preclusion of this judgment by an administrative third-party review, which is even now subject to appeal, would do grave damage to our system of justice and the rule of finality.

However, the Court declines to order NetScout's surety, RLI Insurance Company, to directly pay the affirmed amounts of the judgment at this time as PI requested.  PI has not yet, for example, sought a writ of execution under Rule 69.  Rule 65.1 sets forth that "[t]he security provider's liability **may** be enforced on motion without an independent action."  FED. R. CIV. P. 65.1 (emphasis added).  This language is permissive rather than mandatory.  According with the principle that enforcement through a surety on bond should be a means of last resort, rather than the first step, the Court will reserve action until PI has shown that it has exhausted all other methods of traditional enforcement.

Notably, the language of the bond recites "NOW, IF THE SAID Principal(s) [NetScout] shall duly prosecute said appeal, and **shall moreover pay the amount of the said judgment rendered**, then this obligation to be null and void, otherwise to remain in full force and effect . . . ." (Dkt. No. 350-1 (emphasis added).)  Thus, NetScout should be afforded the opportunity to make payment or be forced to pay through ordinary execution before the Court orders payment under the supersedeas bond.  The Court does not approve of PI's short circuiting of the normal enforcement procedure to obtain the damages owed directly from NetScout.  To the extent that PI

13

seeks the Court issue an order directing RLI Insurance Company to immediately pay PI the damages owed pursuant to the Amended Final Judgment, such relief is **DENIED WITHOUT PREJUDICE**.  Should normal execution efforts by PI against the assets of NetScout not satisfy this obligation, it may seek relief against the supersedeas bond at a later date.

IV.    **CONCLUSION**

For the reasons discussed herein, PI's Motion to Enforce (Dkt. No. 398) is **GRANTED-AS-MODIFIED** herein; NetScout's Motion to Stay Enforcement (Dkt. No. 400) is **DENIED**; and the Motion to Substitute (Dkt. No. 408) is **DENIED-AS-MOOT**.

**So Ordered this**

**Jan 7, 2023**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE